OPINION OF THE COURT
Acosta, J.
This case requires us to examine the “reasonable accommodation” provisions of the New York State and City Human Rights Laws (HRLs) in the context of a CPLR 3211 motion. We begin with the recognition of the New York City Council’s mandate that courts should be sensitive to the distinctive language, purposes and liberal construction analysis required by the City HRL under Williams v New York City Hous. Auth. (61 AD3d 62, 65 [2009]).
I. Background
Plaintiff was hired by defendant Department of Homeless Services (DHS) in a noncompetitive civil service title in 1988. After 18 years of satisfactory employment, she was granted an approved medical leave extending from about July 26 to October 30, 2006, due to a serious medical condition—breast cancer. By letter dated August 11, 2006, plaintiff requested leave for one full year, beginning that date. DHS denied this request in a letter dated October 16, informing plaintiff that her 12-week medical leave was granted pursuant to the Family and Medical Leave Act, and that as an “employee in a non-competitive title,” she was ineligible for additional unpaid medical leave, which is “only granted to permanent civil service employees, per the Rules and Regulations for Employees Covered under the Career & Salary Plan.” DHS informed plaintiff that if she failed to return to work by her already agreed-upon return date of October 30, 2006, she would be “subject to disciplinary action.” In a separate letter dated October 27, DHS advised plaintiff that if she did not return to work by October 30, she would be subject to discharge from her employment.
On or about that same date, plaintiff modified her request for leave, asking a DHS employee in the Medical Assistance Unit if she could obtain any further extension of her medical leave. The city employee denied this request, telling plaintiff that if she failed to return to work as scheduled, her employment and medical benefits would be terminated.
*173 Plaintiff did not return to work on October 30, 2006, and was terminated thereafter.[1] In this action against the City and DHS, plaintiff alleged that (1) she is a disabled person within the meaning of the State and City HRLs, (2) her request for an extension of medical leave sought a reasonable accommodation under those statutes, and (3) defendants violated the statutes by denying her request and terminating her employment. She further alleged that at the time of her termination she was “unable to return to work for the respondent DHS because of her medical condition of breast cancer,” a condition that still existed on the date the complaint was verified. Plaintiff further asserted that as a result of her loss of medical benefits following termination, she had to delay her scheduled cancer surgery, adversely affecting her medical condition, which was diagnosed as stage III breast cancer. Plaintiff sought reinstatement to her former position at DHS with full back pay retroactive to November 1, 2006, the date she was allegedly terminated, with prejudgment interest thereon, as well as compensatory and punitive damages.
Defendants moved to convert the complaint to a CPLR article 78 proceeding,[2] and for judgment of dismissal on the ground that the denial of plaintiffs request for accommodation was reasonable and lawful. In support, they submitted their Career & Salary Plan, which provided that the two-year limit on leave without pay applies only to “permanent employees,” and not those in “non-competitive” titles. In addition, defendants argued that plaintiff was not disabled within the meaning of the State and City HRLs since (1) she could not perform her job functions either with or without a reasonable accommodation, and (2) the “year long” leave of absence she requested was not a reasonable accommodation.
In opposition, plaintiff argued that the extended leave of absence she sought was a reasonable accommodation, and denial of her request and her subsequent termination because of her disability violated the State and City HRLs.
*174 II. The Motion Court’s Decision
With respect to plaintiff’s causes of action for disability discrimination, the court found she had failed to allege “facts demonstrating that her cancer condition falls within the definition of the term ‘disability’ as contemplated” by the State and City HRLs. The court also determined that plaintiff “failed to set forth in her Complaint factual allegations sufficient to show that, upon the provision of reasonable accommodations, she could perform the essential functions of her job.” In particular, the court found that there was no allegation that plaintiff intended to return to work at the end of the requested leave or that she would be able to perform the essential functions of her job at the end of that period. The complaint, it said, “sets forth only the untenable claim that DHS was required to accommodate plaintiff by holding her job open indefinitely,” and this was insufficient under the State HRL and its “equivalent,” the City HRL. In addition, the court found that there were “no allegations in the Complaint indicating that the decisions made by DHS were based on any factor other tha[n] plaintiff’s noncompetitive title.” Since the court found that plaintiff’s discrimination claims were “insufficiently stated, and that DHS’s determinations were based on its leave policies applicable to non-competitive titles,” the court dismissed the claim for compensatory and punitive damages arising from DHS’s denial of plaintiffs request for leave and her termination.
Plaintiff argues on appeal that in dismissing her complaint, the court failed to address whether defendants had violated the State and City HRLs by denying her request for an extension of unpaid medical leave based on a uniform .policy denying such leave to noncompetitive employees, without considering the feasibility of her request for a reasonable accommodation. We agree with plaintiff.
III. Discussion
In considering a CPLR 3211 motion to dismiss, the court must accept the facts as alleged in the complaint as true and accord the plaintiff the benefit of every possible favorable inference, and must determine whether “the facts as alleged fit within any cognizable legal theory” (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; see also Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998]), in this case, violations of the State and City HRLs.
For the reasons set forth herein, we find that defendants have failed to engage in the required individualized process when *175 considering plaintiffs request for extended medical leave, i.e., for reasonable accommodations. We further find that plaintiff has stated causes of action for violations of the State and City HRLs with respect to defendants’ alleged failure to reasonably accommodate plaintiff.
A. The Need for an Individualized Process
The need for individualized inquiry when making a determination of reasonable accommodation is deeply embedded in the fabric of disability rights law (see School Bd. of Nassau Cty. v Arline, 480 US 273, 287 [1987]). Rather than operating on generalizations about people with disabilities, employers (and courts) must make a clear, fact-specific inquiry about each individual’s circumstance.
As explained in Barnett v U.S. Air, Inc. (228 F3d 1105, 1116 [9th Cir 2000, en banc], vacated on other grounds 535 US 391 [2002]), when confronted with a disabled employee’s request for reasonable accommodation, the employer is required to engage in a good faith interactive process whereby employer and employee clarify the individual needs of the employee and the business, and identify the appropriate reasonable accommodation. This good faith process is “the key mechanism for facilitating the integration of disabled employees into the workplace” (228 F3d at 1116). Without it,
“many employees will be unable to identify effective reasonable accommodations. Without the possibility of liability for failure to engage in the interactive process, employers would have less incentive to engage in a cooperative dialogue and to explore fully the existence and feasibility of reasonable accommodations. The result would be less accommodation and more litigation, as lawsuits become the only alternative for disabled employees seeking accommodation. This is a long way from the framework of cooperative problem solving based on open and individualized exchange in the workplace that the [Americans with Disabilities Act (ADA)] intended. Therefore, summary judgment is available only where there is no genuine dispute that the employer has engaged in the interactive process in good faith” (id.).
*176 The State HRL provides protections broader than the ADA;[3] and the City HRL is broader still (see Williams, 61 AD3d at 65). As Barnett advises, summary judgment is not available where there is a genuine dispute as to whether the employer has engaged in a good faith interactive process.
Similarly, dismissal would not be available in the CPLR 3211 context, particularly where, as here, we are not faced with a dispute as to whether there was an “interactive process,” but rather a record that makes clear that there was no interactive process.
Accordingly, we hold that under the broader protections afforded by the State and City HRLs, the first step in providing a reasonable accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested. The interactive process continues until, if possible, an accommodation reasonable to the employee and employer is reached.
The intended purpose of the State HRL cannot be achieved without requiring that employers, in every case, consider the requested accommodations by engaging in an individualized, interactive process (see generally Executive Law § 300). A failure to consider the accommodation, therefore, is a violation of Executive Law § 296 (3) (a), since the “employer has the responsibility to investigate an employee’s request for accommodation and determine its feasibility” (Pimentel v Citibank, N.A., 29 AD3d 141, 149 [2006], lv denied 7 NY3d 707 [2006]; cf. Parker v Columbia Pictures Indus., 204 F3d 326, 338 [2d Cir 2000] [an ADA case in which the court ruled that “(a)t the very least ... an employee who proposes an accommodation while still on short-term leave ... triggers a responsibility on the employer’s part to investigate that request and determine its feasibility. An employer who fails to do so, and instead terminates the employee based on exhaustion of leave, has discriminated ‘because of disability within the meaning of the ADA”]).
An individualized interactive process is also required by the more protective City HRL, and its absence represents a violation of New York City Administrative Code § 8-107 (15) (a). The City HRL’s goal of preventing discrimination (which includes failures to accommodate) “from playing any role in actions re *177 lating to employment, public accommodations, and housing and other real estate” (Administrative Code § 8-101) would otherwise be undermined.[4] This conclusion is bolstered by the fact that the 1991 amendments to the City HRL strove in a multitude of ways to maximize protection of people with disabilities.[5]
The relief available to a plaintiff for an employer’s failure to engage in the interactive process will depend on whether the process could have yielded a substantive accommodation that was reasonable.[6] Defendants cannot avoid engaging in the interactive process contemplated by both statutes by citing their policy that employees in a “non-competitive” title, such as plaintiff, are not allowed medical leave beyond the original 12-week medical leave granted pursuant to the Family and Medical Leave Act. An employer simply cannot abrogate the requirements of the HRLs by carving out a category of employees who are not subject to an interactive process. Accordingly, defen *178 dants’ policy of entertaining requests for extended medical leaves only for permanent civil service employees, pursuant to the Rules and Regulations for Employees Covered Under the Career & Salary Plan, is in direct violation of both statutes. Plaintiff sufficiently alleged violations of both statutes, and it was error to dismiss the complaint at this stage.
IV Plaintiffs Allegations under the State and City HRLs
Separate and apart from the City’s failure to engage in an individualized interactive process in evaluating plaintiff’s request for accommodation, plaintiff has sufficiently pleaded causes of actions for disability discrimination under both statutes.
A. The State HRL
Under the State HRL, “[a] complainant states a prima facie case of discrimination if the individual suffers from a disability and the disability caused the behavior for which the individual was terminated” (Matter of McEniry v Landi, 84 NY2d 554, 558 [1994]). Here, giving plaintiff the benefit of every possible favorable inference, it is clear that she has stated a cause of action.
The State HRL defines “disability” as “a physical, mental or medical impairment . . . which, upon the provision of reasonable accommodations [such as a leave of absence], do[es] not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held” (Executive Law § 292 [21]).
In determining whether plaintiff properly alleged that she could perform her job given a reasonable accommodation, the motion court focused exclusively on plaintiffs initial request for a one-year leave of absence, even though defendants also denied plaintiffs modified request for “any” additional medical leave. This fact alone requires remand because the IAS court’s decision was premised on the incorrect assumption that the only leave request at issue was effectively “open-ended,” i.e., longer than one year or indefinitely. However, according all inferences to plaintiff, we fail to see how she was not asking for an extension of leave for up to one year, and why the City could not reasonably accommodate that request.
Even had plaintiffs request been only for a one-year extension of her leave, however, it was error under the circumstances to dismiss the case on the basis that she failed to allege that she *179 could reasonably perform the job with a reasonable accommodation of extended leave. Plaintiff alleged that she had cancer surgery scheduled,- which was delayed by the termination of plaintiffs job and associated medical benefits. She also alleged that she was a person with a “disability” whose impairment, upon the provision of reasonable accommodation, would not prevent her “from performing in a reasonable manner the activities involved in the job or occupation sought or held.”
From these allegations, it can reasonably be inferred that plaintiff needed the requested leave to be able to have and recover from cancer surgery, after which time she anticipated that she would be able to return to work. Accordingly, the IAS court’s conclusions that the request was for open-ended leave—and that there was no basis on which to believe that plaintiff, with her impairment ameliorated by surgery, might then be able to return to work—were incorrect.
While we recognize that in a great many cases a request for a one-year leave will not turn out to be a “reasonable accommodation” as contemplated by the State HRL, we specifically decline to hold, as a matter of law, that such a request cannot be a reasonable accommodation.[7] It is true that under the State HRL, the concept of “reasonable accommodation” has contained within it the issues of whether the accommodation will be effective and whether the accommodation would cause the employer an undue hardship.[8] The resolution of these issues is, however, *180 singularly case-specific, further illustrating the need for an individualized, interactive fact-specific process.
There are, after all, a great variety of medical conditions (with a great variety of prognoses), just as there are a great variety of covered employers (some very large, others very small). Likewise, there are a great variety of jobs that are held by employees (some whose services cannot be dispensed with for an extended period, and others who can easily be replaced for longer periods). Without a specific evidentiary record, it cannot be said that DHS would have suffered undue hardship from a one-year absence of this employee. Nor can it be said on this record that the provision of the accommodation would not have enabled plaintiff to return to work after a period of recuperation.[9]
B. Plaintiffs Claim under the City HRL
Plaintiff also sufficiently stated a discrimination claim pursuant to the City HRL. We separate the analysis because the disability provisions of the City HRL and State HRL are not “equivalent,” and require distinct analyses.[10]
The very different conception and statutory architecture of “reasonable accommodation” under the City HRL, as set forth *181 in Administrative Code § 8-107 (15) (a), is equally applicable to employment, housing, and public accommodations:
“Requirement to make reasonable accommodation to the needs of persons with disabilities. Except as provided in paragraph (b), any person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity.”
We note first that no exemption from this affirmative and mandatory requirement has been granted to the City in its role as employer.[11]
Unlike the State HRL, the issue of the ability to perform essential requisites of a job is not bound up in the definitions of disability or reasonable accommodation. The City HRL defines “disability” purely in terms of impairments: “any physical, medical, mental or psychological impairment, or a history or record of such impairment” (Administrative Code § 8-102 [16] [a]). These include:
“an impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genitourinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system” (Administrative Code § 8-102 [16] [b] [1]).
There is no subset of persons with disabilities not included among the persons referenced in the affirmative obligation set out in section 8-107 (15) (a).
The City HRL definition of “reasonable accommodation” (§ 8-102 [18]) is itself unique: “such accommodation that can be *182 made that shall not cause undue hardship in the conduct of the covered entity’s business. The covered entity shall have the burden of proving undue hardship.”[12] Here again, there are important differences from the State HRL (as well as the ADA). First, there is no accommodation (whether it be indefinite leave time or any other need created by a disability) that is categorically excluded from the universe of reasonable accommodation. And unlike the ADA, there are no accommodations that may be “unreasonable” if they do not cause undue hardship.[13]
In light of the New York City Council’s legislative policy choice to deem all accommodations reasonable except for those a defendant proves constitute an undue hardship, general principles of statutory interpretation preclude the judicial importation of other exceptions.
“When one or more exceptions are expressly made in a statute, it is a fair inference that the Legislature intended that no other exceptions should be attached to the act by implication, that is, an exception in a statute amounts to an affirmation of the application of its provisions to all other cases which are not excepted” (McKinney’s Cons Laws of NY, Book 1, Statutes § 213, at 373).[14]
The accommodations sought by plaintiff here were not excluded by the definition of reasonable accommodation, and were accommodations that “can” be made, i.e., actions that— independent of any question of hardship—are capable of being made. At this stage of the proceeding, where plaintiff is entitled to every favorable inference and in the absence of any factual record to show undue hardship, the conclusions of the IAS court were erroneous in respect to an evaluation of plaintiffs pleading.
The City Council dealt explicitly with the question of whether an employee, with reasonable accommodation, would be able to perform the essential requisites of the job by placing the burden *183 of proof not on the plaintiff, but squarely on the defendant. The Administrative Code provides only one exception to the reasonable accommodation rule, in section 8-107 (15) (b):
“Affirmative defense in disability cases. In any case where the need for reasonable accommodation is placed in issue, it shall be an affirmative defense that the person aggrieved by the alleged discriminatory practice could not, with reasonable accommodation, satisfy the essential requisites of the job or enjoy the right or rights in question.”
The plain language of the text could not be clearer: it is defendants who had the obligation to prove that plaintiff could not, with reasonable accommodation, “satisfy the essential requisites” of the job. As such, the pleading obligation in relation to this element was on defendants, not plaintiff.[15] Defendants have neither pleaded nor produced any evidence that plaintiff could not, with reasonable accommodation, satisfy the essential requisites of the job.
Y The Dissent
The dissent is fundamentally mistaken in two crucial areas: (a) it treats the City HRL as a carbon copy of its state and federal counterparts, and (b) it construes the right to reasonable accommodation in an unreasonably narrow manner.
Initially and contrary to the dissent’s repeated assertions, the action below was not simply converted to an article 78 proceeding. Defendants’ request to convert was granted only “to the extent that the Court will treat the Complaint as a hybrid action in law and as a proceeding pursuant to Article 78” (emphasis added). Consistent with the existence of causes of action in law for failure to reasonably accommodate the plaintiff, defendants’ brief on appeal has not simply argued the article 78 “arbitrary and capricious” standard, but has also addressed the *184 violations of the State and. City HRLs. The question of how to interpret the various disability provisions of those laws is properly before us on this appeal. Moreover, even assuming the action was converted exclusively to an article 78 proceeding, it is clear that the trial court’s application of the State and City HRLs was “affected by an error of law” (CPLR 7803 [3]), warranting our review.
Most striking about the dissent is its refusal to examine the text of the City HRL.[16] The dissent, for example, refers with approval to the lower court’s finding that “the fact that one suffers from breast cancer, in and of itself, does not establish that [one] has a ‘disability’ ” under the City HRL. The statement itself is incorrect as a matter of law. Unlike Executive Law § 292 (21), the existence of a “disability” for City HRL purposes is fully and conclusively established by nothing more than the existence of “any physical, medical, mental or psychological impairment” (Administrative Code § 8-102 [16] [a]), which includes “an impairment of any system of the body” (§ 8-102 [16] [a] [1]). Contrary to the dissent’s extended discussion about the federal concept of substantial limitations on major life activities, the “New York State Executive Law and the New York City Administrative Code have a broader definition of ‘disability’ than does the ADA; neither statute requires any showing that the disability substantially limits a major life activity” (Reilly v Revlon, Inc., 620 F Supp 2d 524, 541 [SD NY 2009], citing Giordano v City of New York, 274 F3d 740, 753 [2d Cir 2001]).
When the dissent turns to whether plaintiff could, with reasonable accommodation, perform the essential requisites of her job, it fails to acknowledge or discuss the provision of the City HRL that deals specifically with this question, namely Administrative Code § 8-107 (15) (b). As previously noted, this provision places squarely on the shoulders of a defendant the burden of persuasion to prove, as an affirmative defense, that even with reasonable accommodation, a plaintiff could not perform the essential requisites of a job.
When the dissent discusses the nature of what constitutes reasonable accommodation, it fails to include the fact that “reasonable accommodation” is defined differently under the ADA *185 than it is under the City HRL. Under the ADA, reasonable accommodation (42 USC § 12111 [9]) is defined only by illustration, and is a different question from whether the accommodation would cause an employer “undue hardship” (42 USC § 12112 [b] [5] [A]). Under the City HRL, by contrast, the concepts of “reasonable accommodation” and “undue hardship” are inextricably intertwined. An accommodation under Administrative Code § 8-102 (18) cannot be considered unreasonable unless the covered entity proves that the accommodation would cause undue hardship.[17]
Notwithstanding these and other differences between the City HRL and its state and federal counterparts, and ignoring even the EEOC Enforcement Guidance on the ADA itself, referenced above in footnote 7, the dissent elects to try to narrow the available accommodation for workers with disabilities more than the Supreme Court has done in interpreting the ADA, and more than urged by defendants in their briefing to this Court.
According to the dissent, the provision of additional leave time as an accommodation is per se unreasonable where civil service rules and regulations already set forth a leave scheme. The scope of the proposition is breathtaking. As pointed out by the Supreme Court in US Airways, Inc. v Barnett (535 US at 397-398), a reasonable accommodation provision cannot fulfill its function of expanding workplace opportunities for persons with disabilities if it is trumped by “disability-neutral” rules. For example, “[n]eutral ‘break-from-work’ rules would automatically prevent the accommodation of an individual who needs additional breaks from work, perhaps to permit medical visits” {id. at 398). In the same fashion, the dissent’s draconian proposal would allow “neutral” civil service rules to prevent the provision of any additional leave as a reasonable accommodation, regardless of whether such leave imposed any hardship on an employer.[18] The dissent, in other words, would render the reasonable accommodation provisions of both the State and City *186 HRLs powerless to give the added “preferential treatment” necessary to level the playing field for persons with disabilities. Such a result is inconsistent with the remedial purposes of the State HRL and the uniquely broad and remedial purposes of the City HRL.
Most curious about the dissent is its attempt to reopen issues recently decided by Williams. Contrary to the dissent’s assertion, the Court’s decision in that case necessarily required consideration of the purpose and intent of both the 1991 amendments to the City Human Rights Law and the Local Civil Rights Restoration Act of 2005. The various statements in Williams about those enactments—including but not limited to those concerning the enhanced liberal construction requirements of the City Human Rights Law—represented holdings of the Court, and cannot and should not be trivialized as “dicta.”[19]
The dissent would prefer to ignore the Restoration Act, and to continue to have courts give weight to decisions that failed to respect the differences between the City HRL and its state and federal counterparts. Studiously avoiding the fact that the Restoration Act had at its core revisions to the text of Administrative Code § 8-130, and ignoring that the import of that provision and of the Restoration Act of 2005 was to reject unequivocally the practice of construing City HRL provisions in tandem with their state and federal counterparts (see Williams, 61 AD3d at 66-67), the dissent asserts that the City Council lacked the authority to effect its will through clarifying legislation.
That pronouncement would have come as a surprise to this Court, to our State’s Court of Appeals, and to Congress.
This Court was the first to recognize (15 years ago) that the City Council had the authority to create a private right of action, even one that went beyond the remedies granted by the State HRL (Bracker v Cohen, 204 AD2d 115 [1994]).
The Court of Appeals has also recognized the City Council’s authority to prohibit discrimination beyond that prohibited by the State HRL or by federal civil rights law (see e.g. Levin v *187 Yeshiva Univ., 96 NY2d 484, 493 [2001] [recognizing the City HRL’s distinctly disparate impact and sexual orientation protections]; see also McGrath v Toys “R” Us, Inc., 3 NY3d 421, 433 [2004] [“The City Council has not hesitated in other circumstances to amend the New York City Human Rights Law to clarify its disagreement with evolving Supreme Court precedent”]).[20]
Congress expects federal enactments to serve as a floor of rights below which states and localities may not fall, not a ceiling above which states and localities may not rise. This principle is contained in title VII of the Civil Rights Act of 1964 (42 USC § 2000e-7) and in the Fair Housing Act (42 USC § 3615). The ADA explicitly makes this point as well:
“Nothing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter” (42 USC § 12201 [b] [emphasis added]).
In short, despite the dissent’s skepticism about the City Council’s authority to legislate independently in the field of civil rights, that authority clearly exists. The professed alarm about the City Council taking actions to nullify Supreme Court precedent ignores the distinction between the judicial and legislative roles. The United States Supreme Court interprets federal civil rights laws whereas the City Council enacts local law. The City Council has not and could not purport to have authority with respect to the former; a Supreme Court pronouncement as to *188 federal law has no necessary bearing on what the City Human Rights Law says or is intended to mean.[21]
Likewise, the City Council has the authority to legislatively overrule court interpretations of its laws with which it disagrees by amending or clarifying those laws. One crucial legislative function is to clarify the meaning and purpose of the Legislature’s enactments;[22] it is the essence of the judicial function to honor legislative intent.[23]
The dissent is correct insofar as it asserts that the State HRL does require plaintiff ultimately to show that, with reasonable accommodation, she could perform the essential requisites of a job. But the dissent proposes that this Court do exactly the opposite of what we are required to do in reviewing the grant of a motion to dismiss. Instead of drawing all inferences in favor of the nonmoving party, as required, the dissent would have us *189 draw all inferences in favor of the moving party. Contrary to the dissent, a request for accommodation need not take a specific form,[24] and the allegation in the complaint that plaintiff followed up her initial request for leave by asking if any additional leave could be made available to her is plausibly understood as a request for some leave, not necessarily “a request for reconsideration of her original request.”[25] Similarly, it is no conclusory “jump” to infer that plaintiff was claiming she would have been able to return to work where the complaint alleged that she (a) had cancer, (b) was seeking surgical treatment, and (c) was someone who, with the requested accommodation, could perform the essential requisites of the job.[26]
Insofar as the dissent objects to the proposition that reasonable accommodation under the State and City HRLs requires an employer to engage in an interactive process, we refer to Pimentel, where the employee’s request for an alternative position was met with the take-it-or-leave-it option of returning to her old job or being terminated. There, our colleague conceded that the employer’s position “cannot be deemed, as a matter of law, to be the interactive process envisioned by both state and federal disability discrimination statutes and is insufficient to satisfy [its] statutory obligation to provide ‘reasonable accommodation’ ” (29 AD3d at 152 [Andrias, J., dissenting]).
The dissent resorts to disparaging the majority opinion as reflecting “judicial activism.” It does no such thing. Our task is to actually read the statutes and respect the decisions that have been made by relevant legislative bodies, not to substitute our own opinion. As such, we must be faithful to the language and intent of the statutes we are interpreting, even when others, *190 like the dissent, still construe the provisions of the Human Rights Laws “too narrowly to ensure protection of the civil rights of all persons covered by the law” (from the statement of purpose for the Restoration Act, Local Law 85 § 1).
Finally, contrary to the dissent, it is our responsibility to resolve pure questions of law for the parties and the bar. Doing so does not require us to go beyond the record, but only to interpret the record in light of the applicable statutes.
Accordingly, the order of Supreme Court, New York County (Carol Robinson Edmead, J.), entered October 15, 2007, which, to the extent appealed from, granted defendants’ motion to dismiss the complaint alleging employment discrimination based on a disability in violation of Executive Law § 296 and Administrative Code of the City of New York § 8-107, should be reversed, on the law, without costs, and plaintiffs claims pursuant to the State and City HRLs, as alleged in the first and second causes of action, reinstated.

. Plaintiff claims that she was terminated on November 1, 2006, while the City claims the termination date was January 5, 2007.

. Defendants argued that plaintiff’s complaint lies in the nature of mandamus to review an administrative determination denying her unpaid medical leave, which should have been brought under CPLR 7803. The court granted defendants’ request “to the extent that the Court will treat the Complaint as a hybrid action in law and as a proceeding pursuant to Article 78.” Plaintiff does not challenge this aspect of the court’s decision.

. For example, unlike the ADA, the State HRL definition of disability has no requirement that a physical or mental impairment must substantially limit one or more major life activities of an individual (compare 42 USC § 12102 [1] [A]; [2] with Executive Law § 292 [21]).

. See also United Veterans Mut. Hous. No. 2 Corp. v N.Y. City Commn. on Human Rights, NYU, Mar. 2, 1992, at 35, cols 3, 4 (Sup Ct, Queens County) (upholding the Commission’s “determination that [the housing provider’s] outright refusal to contemplate the provision of any reasonable accommodation irrespective of costs was not consistent with the provisions of the Administrative Code”), affd 207 AD2d 551, 551 (1994) (noting that the State Supreme Court had denied the housing provider’s petition to annul the Commission’s determination as academic “because, while the petition was pending, the City Council amended the Administrative Code to explicitly adopt the Commissioner’s interpretation thereof’ [emphasis added]).

. By way of illustration only, the Fair Housing Amendments Act of 1988 required housing providers to permit persons with disabilities to make reasonable modifications of dwellings at that person’s own expense (42 USC § 3604 [f] [3] [A], as added by Pub L 100-430 § 6 [a]); the City HRL, which uses the term “accommodation” to encompass “modifications,” requires the housing provider to make the change, and does not shift the cost to the person with a disability (unless the housing provider demonstrates undue hardship) (Administrative Code § 8-107 [15] [a]; § 8-102 [18]). Under the ADA, damages, including actual damages, shall not be awarded against a covered entity that, in connection with a request for accommodation, has in good faith engaged in an interactive process with the requester of the accommodation (42 USC § 1981a [a] [3]); the City Council, acting the year after passage of the ADA, did not impose any “good faith” safe harbor against actual damages. The obligation to make reasonable accommodation arises not only when a covered entity “know[s]” of a person’s disability, but when the disability “should have been known” by the covered entity (Administrative Code § 8-107 [15] [a]).

. If so, full remedies under the respective statutes are available. If not, remedies are available under the City HRL only, and are limited to those designed to respond only to the failure to engage in the interactive process. The precise contours of the limitations on relief are best left to be determined in a case where, unlike the instant matter, a substantive accommodation has been shown not to be a reasonable accommodation.

. The Equal Employment Opportunity Commission’s (EEOC) guidance on these issues sets forth no “red line” beyond which leave time is automatically unreasonable (see e.g. EEOC’s Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act). In particular, item 17 provides that an employer may not apply a “no-fault” leave policy, under which employees are automatically terminated after they have been on leave for a certain period of time, to an employee with a disability who needs leave beyond the set period, unless there is another effective accommodation or the granting of the additional leave would cause an undue hardship. “Modifying workplace policies, including leave policies, is a form of reasonable accommodation.” (Id.) Item 44 indicates that providing leave to an employee who is unable to provide a fixed date of return is a form of reasonable accommodation, unless an employer is able to show that the lack of a fixed return date causes an undue hardship.

. Under the State HRL, “reasonable accommodation” means “actions taken which permit an employee, prospective employee or member with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held and include, but are not limited to, provision of an accessible work-site, acquisition or modification of equipment, support services *180 for persons with impaired hearing or vision, job restructuring and modified work schedules; provided, however, that such actions do not impose an undue hardship on the business, program or enterprise of the entity from which action is requested” (Executive Law § 292 [21-e]).
The very different conception and statutory architecture of “reasonable accommodation” under the City HRL is discussed infra.

. The motion court’s focus on the statement in the complaint that plaintiff “remains” unable to return to work is misplaced for two reasons. First, the lawfulness of a request for reasonable accommodation is measured at the time the request is acted upon (or not acted upon). By definition, any accommodation leave for the purpose of having surgery involves some period of time during which the person with a disability is not available or able to work. Second, even from a retrospective point of view, the statement shows only that plaintiff was not ready to return to work three months after the rejection of accommodation (when the complaint was verified), not that a one-year leave would not have been useful. The import of the statement would need to be developed as part of a fuller factual record.

. By means of the Local Civil Rights Restoration Act of 2005 (Local Law No. 85 [2005] of City of NY), the City Council rejected an approach that treated the City HRL as equivalent to its state and federal counterparts (see Williams, 61 AD3d at 67-68 [“the Restoration Act notified courts that (a) they had to be aware that some provisions of the City HRL were textually distinct from its state and federal counterparts, (b) all provisions of the City HRL required independent construction to accomplish the law’s uniquely broad purposes, and (c) cases that had failed to respect these differences were being legislatively overruled”]).

. This point is not contested by the City on appeal. The fact that plaintiffs requests for accommodation were automatically rejected because citywide regulations treat the civil service classes differently does show that defendants were not acting randomly, but were nonetheless acting in violation of the obligation to engage in an interactive process with a person with a disability whose need for an accommodation had become apparent, regardless of her employment status.

. “Accommodation,” as distinct from “reasonable accommodation,” is not a defined term, but from its use in both sections 8-102 (18) and 8-107 (15), it is clear that the term is intended to connote any action, modification or forbearance that helps ameliorate at least to some extent a need created by a disability.

. Under the ADA, there can be accommodations that, despite not causing undue hardship, will be “unreasonable” in the ordinary run of cases (see US Airways, Inc. v Barnett, 535 US 391 [2002]).

. This principle takes on even more force in light of the City Council’s passage of the Restoration Act.

. There is a reference in Pimentel (29 AD3d at 149) to the effect that the plaintiff seeking reassignment as an accommodation had the burden of showing “that she could perform a particular job.” While the plaintiff there had brought both State and City HRL claims, it is clear from the decision that the Court was only discussing State HRL claims, and we read the case as opining only on State HRL standards. That this Court did not there engage in an independent analysis is not surprising in view of the fact that the case was briefed prior to passage of the Restoration Act, at a time when State and City HRL equivalence was often assumed. As Williams later made clear, all provisions of the City HRL must be viewed independently of their federal and state counterparts, in light of the specific and distinctive language of the City HRL, and in view of the City HRL’s uniquely broad and remedial purposes.

. This, unfortunately, was the only way our colleague could remain unconvinced that “the reasonable accommodation required by Administrative Code § 8-107 (15) (a) . . . is, in any meaningful way, different from the reasonable accommodation requirement of Executive Law § 292 (21-e).”

. It is clear from the factors that are enumerated in the statute among those that may he considered as bearing on undue hardship in the employment context, that the inquiry required to determine undue hardship is precisely the type of case-by-case inquiry with which the dissent would prefer to dispense. (See Administrative Code § 8-102 [18] [a]-[d] [setting forth factors including size of work force, financial resources of covered entity, and the impact that making the accommodation would have on the entity]).

. The dissent’s attempt to analogize to the seniority provisions at issue in Barnett is entirely inapposite. Barnett explained that any accommodation *186 that would conflict with seniority provisions could “undermine the employees’ expectations of consistent, uniform treatment—expectations upon which the seniority system’s benefits depend” (535 US at 404). Here, of course, the provision of additional leave time as an accommodation requires nothing to be “taken away” from any other employee.

. We note in this connection that our dissenting colleague has failed to point out, either in this case or in his concurrence in Williams, any way that the Court misconstrued either the 1991 amendments or the Restoration Act (or their purpose or intent).

. As noted in Williams (61 AD3d at 73), McGrath had assumed that, in general, the purposes of the City Human Rights Law were identical to its state and federal counterparts.
“If the City Council had wanted to depart from a federal doctrine, McGrath stated, it should have amended the law to rebut that doctrine specifically. The City Council responded to the premise set forth in McGrath, legislatively overruling McGrath by amending the construction provision of Administrative Code § 8-130, and putting to an end this view of the City HRL as simply mimicking its federal and state counterparts” (61 AD3d at 73-74 [citation omitted]).

. Cfi Justice William J. Brennan, Jr., State Constitutions and the Protection of Individual Rights, 90 Harv L Rev 489, 502 (1977) (state court judges should not automatically adopt federal constitutional decisions as dispositive of the scope of state constitutional guarantees, “for only if [those federal decisions] are found to be logically persuasive and well-reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees, may they properly claim persuasive weight as guideposts when interpreting counterpart state guarantees”).

. Congress has recently done precisely that in order to overcome Supreme Court decisions construing the ADÁ narrowly (see ADA Amendments Act of 2008, Pub L 110-325 § 2 [b]). Among the purposes of that Act was legislatively overruling the Supreme Court’s decision in Toyota Motor Mfg., Ky., Inc. v Williams (534 US 184 [2002]), a case inexplicably referred to by the dissent in the course of a discussion of “substantial impairment” of a “major life activity,” concepts not part of the definition of disability under either the State or City Human Rights Law.

. “The Legislature, by enacting an amendment of a statute changing the language thereof, is deemed to have intended a material change in the law” (McKinney’s Statutes § 193). “The courts in construing a statute should consider the mischief sought to be remedied by the new legislation, and they should construe the act in question so as to suppress the evil and advance the remedy” (McKinney’s Statutes § 95). The dissent states that the majority may not refer to the preamble of the Restoration Act, arguing that reference to the language of a statutory preamble is permissible only where the body of the act is not free from ambiguity, citing McKinney’s Statutes § 122. The dissent is mistaken.
The City HRL’s overarching substantive provision—Administrative Code § .8-130—demands that the rest of the law’s provisions be interpreted in a way to accomplish the uniquely broad and remedial purposes of the statute. The preamble to its enactment, as well as other legislative history, is relevant to those determinations. Indeed, the very section of McKinney’s Statutes cited by the dissent states that a preamble “is said to be the key which opens the mind of the lawmakers as to the mischiefs which are intended to be remedied by the statute” (§ 122, Comment, at 244).

. See e.g. EEOC Enforcement Guidance items 1 and 3 (requests for accommodation may be in plain English, need not mention the statute or the term “reasonable accommodation,” and need not be in writing).

. Note that the City HRL states explicitly that the affirmative obligation to accommodate arises when the disability “is known or should have been known by the covered entity” (Administrative Code § 8-107 [15] [a]).

. The dissent complains that the last of the allegations was in the form of a “conclusory allegation” reciting that she was “a person with a disability as defined in Executive Law § 292 (21).” In so doing, the dissent fails to appreciate that CPLR 3013 requires only that statements in a pleading be “sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.” The complaint did so (cf. Swierkiewicz v Sorema N. A., 534 US 506 [2002] [title VII employment discrimination complaint need not set forth specific facts establishing a prima facie case under the McDonnell Douglas Corp. v Green (411 US 792 [1973]) framework]).