■ GUISEPPE ROMANELLO, Appellant-Respondent, v INTESA SANPAOLO S.P.A., Respondent-Appellant, and ANN STEFAN, Respondent. [949 NYS2d 345]—

The complaint alleges that plaintiff Giuseppe Romanello, an executive employed at the New York branch of defendant Intesa Sanpaolo S.p.A. (Intesa), became disabled on or about January 9 and 10, 2008, due to the onset of illness causing visual disturbances, inability to concentrate or read, and faintness. As a result of his alleged disability, plaintiff did not return to his office after January 10, 2008, with the exception of an unsuccessful attempt to resume work on January 22, 2008. Plaintiff alleges that he has been diagnosed as suffering from major depression, syncope and collapse, neurasthenia, and anxiety.

After plaintiff had been absent from work for more than four months, Intesa sent his counsel a letter, dated May 29, 2008, stating, among other things: "[Plaintiff's leave pursuant to the Family and Medical Leave Act] expires on June 3, 2008 and

[Intesa] would appreciate knowing whether he intends to return to work or to abandon his position." In response, by letter dated June 2, 2008, plaintiff's counsel asserted, inter alia, that: (1) plaintiff "remains unable to return to work in any capacity because of his disabling conditions"; (2) plaintiff's "severe and disabling illnesses . . . have prevented him, and continue to prevent him, from working in any capacity, let alone in the capacity in which he had been serving"; (3) plaintiff had "an uncertain prognosis and a return to work date that is indeterminate at this time"; (4) "if there is to be any severance of the employment relationship between [plaintiff] and [Intesa], it will be of [Intesa's] volition only and not an 'abandonment of position' by [plaintiff]"; and (5) Intesa *"will bear any related consequences and liabilities for its termination of [plaintiff's] employment in such circumstances"* (emphasis added). Immediately thereafter, however, the letter made another demand suggesting that plaintiff's true concern was not keeping his job but continuing to receive his salary until the next month: "Whether or not [Intesa] chooses to sever its employment relationship with [plaintiff] at this time, [plaintiff] remains entitled to continued payments pursuant to [Intesa's] salary continuation policy for a period of six months after his disability began." Thereafter, Intesa terminated plaintiff's employment as of June 4, 2008.

Plaintiff commenced this action against Intesa and its director of human resources in 2009, asserting nine causes of action. In lieu of answering, defendants moved, pursuant to CPLR 3211 (a) (1) and (7), to dismiss all causes of action except the sixth (for breach of contract). The court granted the motion to the extent of dismissing the first through fifth, eighth and ninth causes of action. Plaintiff appeals the dismissal of these claims, while Intesa cross-appeals the denial of its motion with respect to the seventh cause of action. We modify to dismiss the seventh cause of action and affirm the dismissal of the remaining causes of action at issue.

The first and second causes of action allege that Intesa, in terminating plaintiff's employment, discriminated against him on the basis of disability in violation of the New York State Human Rights Law (Executive Law § 296 [1] [a]) (the State HRL) and the New York City Human Rights Law (Administrative Code of City of NY § 8-107 [1] [a]) (the City HRL), respectively. The State HRL prohibits discharging an employee because of a disability, with the term "disability" defined as "limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation

sought or held" (Executive Law § 292 [21]). The City HRL similarly prohibits discharging an employee because of a disability, with the employer afforded an affirmative defense if the complainant "could not, with reasonable accommodation, satisfy the essential requisites of the job" (Administrative Code of City of NY § 8-107 [15] [b]).

In general, under both the State HRL and the City HRL, an employer is obligated to engage a disabled employee in a "good faith interactive process" to identify a reasonable accommodation that will permit the employee to continue in the position (*see e.g. Phillips v City of New York*, 66 AD3d 170, 176 [2009]). In this case, the undisputed documentary evidence establishes that Intesa attempted to initiate a good faith interactive process by way of its letter of May 29, which asked plaintiff "whether he intend[ed] to return to work," a question that, by necessary implication, also sought the time frame within which plaintiff expected to be able to resume working, if that was his intention. In light of the undisputed documentary evidence establishing that Intesa made a good faith attempt to open an interactive process with plaintiff for the purpose of reaching a mutually acceptable accommodation, the dissent's suggestion that Intesa did not fulfill its duty to engage in such a process is simply inaccurate. On the contrary, the allegations of the complaint and the undisputed documentary evidence establish, as a matter of law, that it was plaintiff who abruptly cut off the interactive process that Intesa tried to initiate.

In a tone that can only be characterized as hostile, plaintiff's counsel's June 2 letter to Intesa went well beyond merely stating that plaintiff was then disabled for work in any capacity and that he would not be able to resume working for an "indeterminate" period of time. The letter suggested no time frame within which plaintiff's prognosis could be expected to be better understood and a possible date for returning to work could be usefully discussed, nor did it invite Intesa to offer other options; to the contrary, the letter threatened litigation if its demands were not met. The letter essentially shut the door to any further discussion, instead delivering a demand that Intesa grant plaintiff an indefinite leave of absence or else be prepared to face a lawsuit. In other words, the letter from plaintiff's counsel confronted Intesa with an inflexible, categorical demand, with no room for negotiation and no suggestion of a time frame within which plaintiff would be open to revisiting the issue. By spurning in advance, and through counsel, any good faith attempt by Intesa to engage in a bilateral, interactive process to find a way to reconcile both parties' needs, plaintiff discharged

Intesa, as a matter of law, of the obligation to continue its efforts to initiate such a process.

The dissent appears to labor under the misconception that the basis for our affirmance of the dismissal of plaintiff's discrimination claims is that "the employee did not come forward with a specific request for an accommodation at the inception of the process." On the contrary, the basis on which we affirm the dismissal of these claims is the unequivocal demand for indefinite leave, coupled with the threat of litigation, with which plaintiff's counsel responded to Intesa's attempt to initiate a dialogue. Plaintiff's hostile and imperious response to Intesa's question foreclosed any possibility of negotiation and was unaccompanied by any suggestion of a future time at which the situation could be reassessed. Significantly, the demand for indefinite leave was made through counsel, indicating that there was no reason to expect a more cooperative disposition to emerge from plaintiff if Intesa made further efforts to pursue a dialogue. Hence, even assuming that an indefinite leave of absence might constitute a reasonable accommodation in a proper case, here, plaintiff's counsel's demand that Intesa either grant indefinite leave or face litigation excused Intesa from further efforts to seek agreement with plaintiff on a reasonable accommodation. The dissent, on the other hand, appears to believe that, notwithstanding plaintiff's counsel's unequivocal pronouncements, Intesa was obligated to importune plaintiff to engage in further discussion. We do not believe that, under these circumstances, the employer's duty extended so far.[1]

The dissent does not dispute that an employee does not invite an "interactive process" by threatening to sue the employer if it fails to grant his initial, maximal demand. The dissent contends, however, that the June 2 letter of plaintiff's counsel "never" threatened litigation, and, for good measure, accuses us of basing our conclusion "upon a distorted interpretation of the facts." The dissent can maintain this position only by selectively quoting the June 2 letter and resolutely ignoring its key statement: "[Intesa] will bear any related consequences and liabilities for its termination of [plaintiff's] employment in such circumstances." Strikingly, nowhere does the dissent quote or

---

**1.** The *Phillips* case, on which plaintiff and the dissent rely, is not controlling. The cancer-stricken plaintiff in *Phillips* did not issue an ultimatum (through counsel) for an indefinite leave of absence, but merely "requested" a one-year extension of her medical leave (*Phillips v City of New York*, 66 AD3d 170, 172 [2009]). After that request was denied, she "ask[ed] . . . if she could obtain *any* further extension of her medical leave," which her employer also denied (*id.*).

refer to this language, which, even when viewed in the light most favorable to plaintiff, cannot reasonably be interpreted as anything other than a threat to sue in the event Intesa terminated plaintiff at any time before he either returned to work or announced that he was relinquishing the position. Such frankly hostile language in a letter from counsel is not reasonably susceptible to interpretation as an invitation to engage in a dialogue aimed at finding an accommodation acceptable to both parties—a point the dissent apparently concedes by pretending that the language does not exist. Accordingly, the motion court correctly dismissed the first and second causes of action as legally insufficient.[2]

It is ironic that the dissent accuses the majority of "ignoring the context of plaintiff's counsel's statements" when it is the dissent that ignores the language of the June 2 letter that is inconvenient to its position. Meanwhile, the majority takes account of all pertinent contents of the letter, including the language on which the dissent focuses to the exclusion of the threat that immediately follows. Whether it is the majority or the dissent that gives an accurate account of plaintiff's counsel's June 2 letter may be judged from reading in their entirety the three relevant paragraphs of the letter, which are set forth in the margin.[3]

---

**2.** The logic of the dissent's assertion that our position is "internally inconsistent" eludes us. Intesa's May 29 letter was an attempt to open an interactive process between itself and plaintiff, to which plaintiff responded, through his counsel's June 2 letter, by threatening litigation unless Intesa met his maximal demand for indefinite leave. Contrary to the dissent's further contention, we are not applying different interpretative standards to the letters, but giving each one its only reasonable interpretation. By ignoring the language in plaintiff's counsel's June 2 letter that plainly threatens litigation, the dissent essentially concedes that, even when viewed in the light most favorable to plaintiff, this language cannot reasonably be interpreted as part of a good faith interactive process.

**3.** "Notwithstanding my lack of additional information from Prudential, I note and reiterate certain things in response to your letter. First is that Mr. Romanello has, since on or about January 9, 2008, been suffering from severe and disabling illnesses that have prevented him, and continue to prevent him, from working in any capacity, let alone in the capacity in which he had been serving Intesa SanPaolo (the 'Bank') until that time. Mr. Romanello's illnesses are disabilities, both within the meaning of the Bank's long term disability benefits plan, sponsored by the Bank through the New York State Bankers Association and insured with Prudential, and pursuant to statute, including the Americans with Disabilities Act, 42 USC § 12101, *et seq.*, the New York State Human Rights Law, Exec. L. § 290, *et seq.* and the New York City Human Rights Law, NYC Admin. Code § 8-101, *et seq.*

The motion court also correctly dismissed the third and fourth causes of action, which allege that Intesa retaliated against plaintiff in violation of the State HRL (Executive Law § 296 [7]) and the City HRL (Administrative Code of City of NY § 8-107 [7]), respectively. Each of these provisions, in pertinent part, makes it unlawful for an employer to retaliate against an employee for having "opposed" a discriminatory practice. While the insufficiency of the underlying discrimination claims does not necessarily mandate dismissal of the retaliation claims (*see Modiano v Elliman*, 262 AD2d 223 [1999]), plaintiff does not allege that Intesa terminated his employment because he somehow "opposed" a discriminatory practice (*see McKenzie v Meridian Capital Group, LLC*, 35 AD3d 676, 677-678 [2006]). Rather, he was terminated because he was unable to do his job for an indefinite period of time. Whether or not this termination constituted unlawful discrimination on the basis of disability, it did not constitute retaliation.

The fifth cause of action, for tortious interference with contract, was correctly dismissed. This claim is based on the allegation that Intesa induced Prudential, which provided disability insurance to Intesa employees, initially to deny plaintiff's

"Your letter states, presumably on the basis of Prudential's alleged determination that Mr. Romanello ceased to be eligible for short term disability benefits on April 3, 2008, that 'Mr. Romanello's FMLA expires on June 3, 2008 and the bank would appreciate knowing whether he intends to return to work or abandon his position.' In response, we advise you that Mr. Romanello remains unable to return to work in any capacity because of his disabling conditions, which have been amply documented.

"We do not know the content of or basis for Prudential's decision with respect to Mr. Romanello's short term disability benefits, but suggest you may be reading too much into whatever communication from Prudential you received. Prudential's website indicates Mr. Romanello has a long term disability insurance claim opened and pending as of May 19, 2008. For his part, Mr. Romanello has not at any time evidenced or expressed an intention to 'abandon his position' with the Bank. Rather, he has been sick and unable to work, with an uncertain prognosis and a return to work date that is indeterminate at this time. Accordingly, if there is to be any severance of the employment relationship between Mr. Romanello and the Bank, it will be of the Bank's volition only and not an 'abandonment of position' by Mr. Romanello; and the Bank will bear any related consequences and liabilities for its termination of Mr. Romanello's employment in such circumstances. Whether or not the Bank chooses to sever its employment relationship with Mr. Romanello at this time, Mr. Romanello remains entitled to continued payments pursuant to the Bank's salary continuation policy for a period of six months after his disability began. Your confirmation that this benefit will continued [sic] to be provided will be appreciated; if it will not be, a detailed explanation for the reasons why will also be appreciated."

claim for disability benefits. The complaint further alleges, however, that plaintiff subsequently persuaded Prudential to reverse this determination and to pay him benefits for the full period of his alleged disability. Because Prudential ultimately approved plaintiff's claim and paid all the benefits he sought, it did not breach the contract, and, in the absence of an actual breach of a contract, no claim will lie against a third party (here, Intesa) for tortious interference with that contract (*see e.g. NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 620-621 [1996]). We note that the complaint, in alleging that Prudential initially denied the claim in reliance on information provided by Intesa, negates any inference that the initial denial, notwithstanding that it was subsequently corrected, was so lacking in good faith as to constitute a breach of contract by Prudential (*see Sukup v State of New York*, 19 NY2d 519, 522 [1967]).

The eighth cause of action, for defamation, was correctly dismissed. Plaintiff's allegations of "statements to the effect that" and "or other words synonymous therewith" were not sufficiently specific (CPLR 3016 [a]; *see e.g. BCRE 230 Riverside LLC v Fuchs*, 59 AD3d 282, 283 [2009]; *Gardner v Alexander Rent-A-Car*, 28 AD2d 667 [1967]), and he also failed to allege the time at which, the manner in which, and the persons to whom the publication was made (*Murphy v City of New York*, 59 AD3d 301 [2009]; *see also Seltzer v Fields*, 20 AD2d 60, 64 [1963], *affd* 14 NY2d 624 [1964]). Plaintiff is not entitled to discovery to ascertain the particulars that are lacking (*BCRE*, 59 AD3d at 283; *see also Cerick v MTB Bank*, 240 AD2d 274 [1997]).

The ninth cause of action, for violation of medical privacy, was correctly dismissed, since defendants are neither physicians nor employees of a nursing home or a facility providing health-related services (*cf. Doe v Community Health Plan—Kaiser Corp.*, 268 AD2d 183, 187 [2000]; *Randi A. J. v Long Is. Surgi-Ctr.*, 46 AD3d 74, 75, 82 [2007]). The Health Insurance Portability and Accountability Act and its regulations do not create a private right of action (*see Jurado v Kalache*, 29 Misc 3d 1005, 1009 [2010] [citing cases]), and the other statute plaintiff cites (42 USC § 12112[d] [3] [B], [C]) is inapplicable here.

Finally, the seventh cause of action, for the withholding of wages in violation of article 6 of the Labor Law, should be dismissed. Article 6 of the Labor Law does not apply to plaintiff because he was an executive earning more than $900 per week

(*see* Labor Law § 198-c [3]; *Fraiberg v 4Kids Entertainment, Inc.*, 75 AD3d 580, 583 [2010]). Concur—Andrias, J.P, Friedman, and Román, JJ.

Sweeny and Renwick, JJ., dissent in part in a memorandum by Renwick J., as follows: Plaintiff Giuseppe Romanello is a former executive of defendant Intesa Sanpaolo, S.p.A., an Italian bank. He worked there for 25 years, in the Bank's New York office, until his termination for not returning to work following medical leave. Plaintiff sued his former employer, claiming, inter alia, that he was a disabled person under the New York State and New York City Human Rights laws and that defendant violated those laws when it discharged him because of his disability. Unlike the majority, I would find that plaintiff has stated a cause of action for employment discrimination pursuant to the reasonable accommodations requirement of New York State Human Rights Law (Executive Law § 290 *et seq.*) (NYSHRL) and New York City Human Rights Law (tit 8 of the Administrative Code of the City of NY) (NYCHRL) that has not been refuted by the evidence adduced by defendants. Accordingly, I respectfully dissent to the extent the majority affirms the dismissal of the first and second causes of action, which alleged that defendants failed to comply with the reasonable accommodations requirement of NYSHRL and NYCHRL.

The undisputed facts relevant to the claim of failure to accommodate are as follows. In early January 2008, plaintiff became ill, which forced him to be absent from work. He suffered severe visual disturbances, the inability to read or concentrate and a feeling that he was going to pass out. When he tried to return to work later that month, he also suffered from panic. He was ultimately diagnosed with major depression, syncope and collapse, neurasthenia, and anxiety. Four months later, on May 29, 2008, the bank's lawyer told plaintiff's lawyer, "Mr. Romanello's FMLA [i.e., leave pursuant to the Family and Medical Leave Act, 29 USC § 2601 *et seq.*] expires on June 3, 2008 and the bank would appreciate knowing whether he intends to return to work." On June 2, plaintiff's lawyer replied, "Mr. Romanello remains unable to return to work in any capacity because of his disabling conditions . . . [He has] an uncertain prognosis and a return to work date that is indeterminate at this time." Without engaging in any further communication with plaintiff, the bank immediately terminated plaintiff, effective June 4, 2008.

In order to state a prima facie case of employment discrimination due to a disability under both NYSHRL and NYCHRL,

plaintiff must demonstrate that he suffered from a disability and that his employer failed to meet its statutory duty to "provide reasonable accommodations to [his] known disabilities . . . in connection with a job or occupation sought or held" (Executive Law § 296 [3] [a]; *see Pimentel v Citibank*, N.A., 29 AD3d 141 [2006], *lv denied* 7 NY3d 707 [2006]; *Timashpolsky v State Univ. of N.Y. Health Science Ctr. at Brooklyn*, 306 AD2d 271, 273 [2003], *lv denied* 1 NY3d 507 [2004]).

The issue of whether plaintiff suffered a disability as defined by the NYSHRL and NYCHRL is not in contention. Nor can it be seriously disputed that an employee who cannot return to work after exhausting all available leave provided by law or company policy may be still be a qualified individual entitled to additional leave as a reasonable accommodation (*see e.g. Phillips v City of New York*, 66 AD3d 170, 177 [2009] [the City's policy of entertaining requests for extended medical leaves by permanent civil service employees only, and not by city employees with noncompetitive civil service titles, violated requirement of NYSHRL and NYCHRL that employers engage in individualized interactive process to try to find a reasonable accommodation for disabled employees]; *see also Picinich v United Parcel Serv.*, 321 F Supp 2d 485, 503-505 [ND NY 2004]). A leave of absence may qualify as a reasonable accommodation because it permits an employee to pursue or continue medical treatment until the employee can return to work to perform the normal functions of the job (*see e.g. Phillips*, 66 AD3d at 179 ["plaintiff needed the requested leave to be able to have and recover from cancer surgery, after which time she anticipated that she would be able to return to work"]).

Nevertheless, the majority holds that the aforementioned June 2nd letter from plaintiff's lawyer to his employer obviated the bank's obligation to offer some accommodation for plaintiff's disabilities, as a matter of law, because "[t]he letter essentially shut the door to any further discussion" since "the letter threatened litigation if its demands were not met." The majority, however, reaches this legal conclusion upon a gross distortion of the facts.

The majority states that "[t]he dissent does not dispute that an employee does not invite an 'interactive process' by threatening to sue the employer if it fails to grant his initial, maximal demand." Contrary to the majority's interpretation, however, the letter from plaintiff's counsel never "threatened litigation if its demands [for an accommodation] were not met." The major-

ity reaches this incorrect factual determination, it appears, by ignoring the context of plaintiff's counsel's statements. As the majority is well aware, plaintiff's counsel's statements were made in response to his employer's explicit inquiry as to "whether he intend[ed] to return to work or to abandon his position." In response, counsel explicitly stated, inter alia, that "if there is to be any severance of the employment relationship between [plaintiff] and [Intesa], it will be of [Intesa's] volition only and not an 'abandonment of position' by [plaintiff]." Thus, it was in an effort to emphasize that plaintiff had no intention to sever the employee/employer relation that the "threat" of litigation took place, and not, as the majority mis-characterizes it, as a "threat[ ] to sue the employer if it fails to grant his initial, maximal demand."

Accordingly, the documentary evidence proffered by defendants does not utterly refute plaintiff's factual allegations or conclusively establish a defense as a matter of law so as to compel the dismissal of the cause of action for employment discrimination for failure to provide a reasonable accommodation pursuant to NYSHRL and NYCHRL. Viewed in a light most favorable to plaintiff, the letter conveyed that plaintiff did not wish to "sever" the employee/employer relationship that had existed for 20 years. Rather, plaintiff wished to return to work, but he could not provide a return date because of his "uncertain prognosis." Nor did defendants show that a material fact alleged by plaintiff was "not a fact at all" or "that no significant dispute exist[ed] regarding it" (*Guggenheimer v Ginzburg,* 43 NY2d 268, 275 [1977]).

Significantly, the majority's position appears to be internally inconsistent. On the one hand, the majority argues that defendant did engage in an interactive process, albeit *"by . . . implication"* (emphasis added), when it asked plaintiff "whether [he] intend[ed] to return to work or to abandon his position." According to the majority, this question, "by necessary implication, also sought the time frame within which plaintiff expected to be able to resume working." On the other hand, the majority argues that defendant did not have to engage in an interactive process because plaintiff's counsel's response to the employer's question of when plaintiff was coming back was an "unequivocal demand for indefinitive leave, coupled with the threat of litigation." Either way, the majority cannot come to grips with the fact that it can only maintain these contradictory positions by treating the employer's letter in a light most favorable to the employer and paradoxically treating plaintiff's counsel's letter in a light least favorable to the employee. Of course, this may be

a reasonable position for the jury to take at trial, but not for this Court to take when evaluating a motion to dismiss based on documentary evidence that is subject to reasonable interpretations.

Fundamentally, the majority's conclusions about the intent of the June 2nd letter arise from a misunderstanding of the key that opens the door to protection under NYSHRL and NYCHRL with respect to reasonable accommodation of disabilities. First, the majority misses the point that, while usually it is the employee who first raises the subject of a specific accommodation, no request by the employee is required to trigger the employer's duty to provide reasonable accommodations to the employee's known disabilities. Rather, under NYSHRL and NYCHRL, the employer's duty is triggered once it knows of a disability and the employee's desire for an accommodation (see Executive Law § 296 [3]; 9 NYCRR 466.11 [j], [k]; Administrative Code of City of NY § 8-107 [1] [a]). Thus, what matters under the human rights laws is not the manner in which the request for an accommodation is made, but whether the employee provided the employer with enough information under the circumstances that the employer can be said to know both of the disability and the desire for an accommodation. In this case, the majority cannot dispute that the letter from plaintiff's counsel put the employer on notice of the need for an accommodation by stating that plaintiff "remain[ed] unable to return to work in any capacity because of his disabling conditions."

The majority also seems oblivious to the fact that the first step in providing reasonable accommodations for a disabled employee is to engage in a good faith interactive process that assesses the employee's needs and the feasibility of a reasonable accommodation (Phillips, 66 AD3d at 176; Pimentel, 29 AD3d at 148; see also Parker v Columbia Pictures Indus., 204 F3d 326, 337-338 [2nd Cir 2000]). "Th[is] interactive process continues until, if possible, an accommodation reasonable to the employee and employer is reached" (Phillips, 66 AD3d at 176). Thus, an employer that receives proper notice that an employee suffers from a disability cannot escape its duty to engage in an interactive process simply because the employee did not come forward with a specific request for an accommodation at the inception of the process.

The interactive process is critical because the issue of the need for an accommodation raises highly "fact-specific" and individualized questions about the precise limits caused by a person's disability and the range of accommodations available for a disability that are consistent with the employer's business

need and other appropriate considerations (*see e.g. Phillips*, 66 AD3d at 175-176). Accordingly, it would make little sense to insist that the employee must arrive at the end of the interactive process before the employer has a duty to participate in the process. That approach would effectively eliminate the requirement that employers participate in the process in good faith. It would unfairly exploit the employee's lack of information about the type of accommodation that the employer may be able to provide. It is also in the employer's interest to engage in the interactive process. If an employer fails to engage in the interactive process, it may fail to discover a reasonable accommodation for the employee's disability.

Consistent with this legal framework, this Court's recent pronouncement on the subject, *Phillips v City of New York* (66 AD3d 170 [2009]), makes clear that a claim of failure to accommodate a disability cannot be dismissed where the employer has failed to engage in an interactive process. *Phillips* involved a cancer-stricken employee terminated for not returning to work following medical leave. The City Department of Homeless Services (DHS) hired Phillips in 1988 to fill a noncompetitive civil service title. In 2006, Phillips was diagnosed with cancer, and was granted 12 weeks of medical leave. Before she returned to work, Phillips requested additional time off, but this request was denied. DHS explained that the 12-week medical leave was granted under the Family and Medical Leave Act, and that she was ineligible for additional unpaid medical leave as an employee in a noncompetitive title. DHS warned Phillips that she could be terminated if she failed to return to work after the 12-week period. Phillips did not return to work, and her employment and medical benefits were terminated. Phillips sued the City, claiming that she was a disabled person under NYSHRL and NYCHRL, and that the City violated those laws by denying her request for additional leave and terminating her employment. Supreme Court granted DHS's motion to dismiss the case, and Phillips appealed.

This Court reversed, finding that the City should have evaluated the request for accommodation, instead of summarily denying it. This Court ruled that the City was wrong to deny the request without first engaging in a good faith interactive process that assessed Phillips's needs and the feasibility of an accommodation. The human rights laws required the City to participate in this process with employees holding non-competitive titles, as well as permanent employees (*Phillips*, 66 AD3d at 177). Similarly, in this case, the bank should have evaluated the feasibility of accommodating plaintiff's disabilities, rather than

summarily terminating him upon the expiration of his medical leave.

I do not mean to suggest that an employer will be held liable under NYSHRL and NYCHRL for any failure whatsoever to engage in the interactive process. An employer may not be held liable for a failure to provide reasonable accommodation based on its failure to engage in an interactive process absent a showing that the breakdown of the process led to the employer's failure to accommodate (*see Hayes v Estee Lauder Cos., Inc.*, 34 AD3d 735 [2006]). Conversely, a claim of discrimination cannot be dismissed where, as here, the record does not establish that the interactive process would not have yielded a reasonable accommodation.

In addition to ignoring the importance of the interactive process, the majority fails to take into account that the Local Civil Rights Restoration Act of 2005 (Local Law No. 85 [2005] of City of NY), requires that a NYCHRL claim be evaluated under a more liberal approach and separately from its state and federal counterparts (*Albunio v City of New York*, 16 NY3d 472, 477-478 [2011]; *see also Phillips*, 66 AD3d at 182-183; Administrative Code § 8-130). Specifically, as *Albunio* points out, "we must be guided by the Local Civil Rights Restoration Act of 2005 (LCRRA), enacted by the City Council 'to clarify the scope of New York City's Human Rights Law,' which, the Council found 'has been construed too narrowly to ensure protection of the civil rights of all persons covered by the law' (Local Law No. 85 [2005] of City of NY § 1)" (16 NY3d at 477).

Significantly, as it pertains to this case, pursuant to NYCHRL, the burden of establishing an inability to accommodate falls squarely upon the employer. "In any case where the need for reasonable accommodation is placed in issue, it shall be an affirmative defense that the person aggrieved by the alleged discriminatory practice could not, with reasonable accommodation, satisfy the essential requisites of the job" (Administrative Code § 8-107 [15] [b]). Moreover, "unlike the ADA, there are no accommodations that may be 'unreasonable' if they do not cause undue hardship" (*Phillips*, 66 AD3d at 182). All accommodations are deemed reasonable unless the employer proves that an accommodation constitutes an undue hardship (id.).

In sum, plaintiff has provided enough facts to state a disability discrimination claim under both NYSHRL and NYCHRL. Accordingly, I would reinstate the employment discrimination claims because defendant has not established that it complied with the reasonable accommodations requirement of the laws.