Goolsby v City of New York (2024 NY Slip Op 24068)

[*1]

Goolsby v City of New York

2024 NY Slip Op 24068

Decided on March 6, 2024

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 6, 2024
Supreme Court, New York County

Jeff Goolsby, Plaintiff,

against
The City of New York, Defendant. 

Index No. 154823/2023

Lawrence Lee Spasojevich, Esq. for Plaintiff
Austin Daniel Kwong Hui Hee, Esq. for Defendant

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38 were read on this motion to/for DISMISSAL.
Plaintiff Jeff Goolsby ("plaintiff") commenced this action against Defendant City of New York ("defendant") alleging that defendant and the New York City Department of Buildings ("DOB") discriminated against plaintiff in violation of the New York City Human Rights Law ("NYCHRL") by denying plaintiff's requests for a reasonable accommodation from New York City's vaccine mandate under the NYCHRL (see New York City Administrative Code §8-107). Specifically, plaintiff alleges that defendant denied his reasonable accommodation requests without reason and without considering any documentation that plaintiff submitted, and that defendant failed to engage in any collaborated dialogue. In this motion sequence (001), defendant moves for dismissal pursuant to CPLR §§3211 (a)(1), (a)(5) and (a)(7). Plaintiff opposes the motion, and cross-moves, pursuant to CPLR §3025(b), for leave to amend plaintiff's complaint. For the following reasons, defendant's motion is granted, and plaintiff's cross-motion is denied.
BACKGROUND
On October 20, 2021, Dr. David Chokshi, the then Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), issued an order mandating all city employees to present evidence of at least one dose of COVID-19 [FN1]
 vaccination by 5:00 p.m. on October 29, 2021 ("City Order"). Failure to comply would result in exclusion from their designated work location starting on November 1, 2021. The City Order explicitly stated, "Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law."
On October 21, 2021, the New York City Department of Citywide Administrative Services ("DCAS") released guidance (referred to as "City guidance") to City agencies regarding the application process for obtaining a reasonable accommodation from the COVID-19 vaccine mandate. Additionally, DCAS provided a FAQ sheet containing details about the criteria for securing medically-based and religious-based reasonable accommodations, allowing exemptions from the vaccine mandate. The FAQ sheet also included information on the conditions under which employees could continue their employment while their requests for vaccine-exemption accommodations were pending. The City guidance outlined specific details pertaining to the acquisition of medical exemptions from the vaccine:
The New York City Department of Health has indicated that the medical basis for a permanent medical exemption includes: Documented contraindication such that an employee cannot receive any FDA-authorized vaccines, with contraindications delineated in CDC clinical considerations for COVID-19 vaccine.
DCAS's guidance incorporated the Centers for Disease Control and Prevention's ("CDC") table for contraindications and precautions to COVID-19 vaccination, which does not identify Wolff-Parkinson-White patterns as a contraindication to receiving the vaccine.
In response to the City Order, New York City implemented specific procedures to address the expected surge in accommodation requests related to COVID-19 vaccination made by its employees. These procedures stipulated that employees must submit accommodation requests to their agency's Equal Employment Opportunity ("EEO") Officer on or before October 27, 2021. If an accommodation was denied by the agency, plaintiff had the right to appeal the decision to the City of New York Reasonable Accommodation Appeals Panel ("Citywide Panel" or "Panel").
The Citywide Panel was established in direct response to the City Order and was responsible for reviewing appeals from employees whose accommodation requests had been rejected by their respective agencies. Employees whose requests were denied received written information about the appeals process, including a link to the City's online appeals request portal. The agency's EEO Office would upload all relevant records within one business day upon notification of an appeal.
The Citywide Panel's purpose was to ensure that denied accommodation requests were considered in line with the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the NYCHRL. The Panel evaluated appeals based on the standards set by these laws and consistent with the guidance issued by the U.S. Equal Employment Opportunity Commission ("EEOC") for COVID-19 related strategies compliant with Title VII and the ADA. The Panel, consisting of three members from different agencies, independently reviewed each appeal before casting votes to uphold or deny on behalf of their agency. The Panel's composition varied based on the nature of the accommodation under consideration, with medical appeals reviewed by the Law Department, DCAS, and DOHMH, and religious appeals by the Law Department, DCAS, and the City Commission on Human Rights ("CCHR").
Upon receiving an appeal, the Panel conducted a preliminary review and sought supplemental information if necessary from the agency, employee, or both. After individual determinations by the Panel members, Eric Eichenholtz or the General Counsel of DCAS, Sanford Cohen, performed a final quality assurance review. If an appeal was granted, plaintiff was notified, and the agency was instructed to implement the accommodation, without providing a written justification.
In the case of a denied appeal, plaintiff received written notification of the decision, without detailed justification, in accordance with local, state, and federal law, which does not mandate a written justification (see N.Y.C. Admin. Code § 8-107[28][d]). This process applied uniformly to all City agencies and employees, including those of DOB.
DOB's EEO Office processed reasonable accommodation requests for DOB employees regarding the City's vaccine mandate based on disability and religion. Guidelines specified that the deadline for requesting a reasonable accommodation from the City Order was October 26, 2021. On October 27, 2021, Kareem Gabriel, then overseeing DOB's EEO Office, attended a virtual meeting hosted by DCAS to further discuss these guidelines.
Requests based on medical and/or religious reasons were reviewed by a member of DOB's EEO Office. If reviewed by the EEO Investigator, a recommendation was issued, then reviewed by the EEO Officer before adoption. Denied employees were notified of their appeal rights, and employees were required to appeal within three business days, submitting appeals through an online portal to the Citywide Panel.
Plaintiff alleges no facts related to his medical reasonable accommodation request in the complaint. However, around October 22, 2021, after DCAS issued its guidance on October 21, 2021, plaintiff submitted reasonable accommodation requests to be exempted from the vaccine mandate, citing strong immunity to COVID-19 and experiencing anxiety and depression. DOB denied the request on November 3, 2021, stating it did not meet the criteria outlined per the DOHMH Commissioner's Order for a medical exemption.
The complaint contains no specific facts about plaintiff's appeal of DOB's denial of his medical reasonable accommodation request. However, around November 10, 2021, plaintiff appealed DOB's denial, and on December 8, 2021, the Citywide Panel denied the appeal after conducting its own evaluation.
Subsequently, plaintiff urged DOB to reconsider his reasonable accommodation request. In response, DOB reminded plaintiff of the reasonable accommodation process and stated reconsideration would only occur if additional information was provided. On January 28, 2022, plaintiff submitted a new letter from Dr. Ronald W. Galluccio ("Dr. Galluccio") to DOB's EEO [*2]Office, stating an arrhythmia-related medical condition. Despite being submitted after the Citywide Panel denied the appeal, DOHMH considered it as part of the appeal, determining that arrhythmia is not a contraindication to vaccination.
On March 4, 2022, plaintiff was notified that the subsequent documentation provided was reviewed, and the Citywide Panel had denied the appeal. On March 8, 2022, plaintiff's employment was terminated by DOB, consistent with City requirements.
On February 6, 2023, Mayor Eric Adams issued an Executive Order rescinding the requirement for prospective City employees to be vaccinated against COVID-19 as of February 10, 2023. Recognizing high vaccination rates, the City repealed the requirement for City employees to demonstrate proof of vaccination, allowing them to return to work. Plaintiff does not allege applying for reinstatement per the February 9, 2023 Executive Order.
On May 29, 2023, plaintiff initiated this action, seeking damages for defendant's denial of plaintiff's medical reasonable accommodation request.[FN2]

 ARGUMENTS
In support of the instant motion, defendant argues that plaintiff fails to state a cause of action under the NYCHRL because, even if the medical condition that plaintiff alleges in the complaint constitutes a "disability" under the NYCHRL, defendant engaged in a sufficient cooperative dialogue pursuant to the Appellate Division, First Department, decision Matter of Marsteller v. City of New York, 217 AD3d 543 (1st Dept 2023). Indeed, defendant alleges that the City established and then publicly and directly conveyed to plaintiff an administrative process for DOB employees to apply for an accommodation to the City's vaccine mandate. Defendant further avers that plaintiff then availed himself of the City's reasonable accommodation request procedures and engaged with DOB and defendant throughout the administrative process. During the interactive dialogue, it was discovered that, according to the DOHMH and CDC's guidance related to the COVID-19 vaccine, plaintiff did not have a medical condition that qualified as a contraindication to the City's vaccine mandate. Consequently, defendant argues that plaintiff did not require a reasonable accommodation to meet any requirement or condition of his employment.
Although plaintiff attaches to the complaint a letter from his cardiologist that plaintiff alleges demonstrates he has a disability entitling him to a reasonable accommodation from the City's vaccine mandate, defendant argues that the letter does not establish that plaintiff has a condition that conflicts with the vaccine mandate entitling him to reasonable accommodation and can only be read to allege that plaintiff may have a heart condition. Regardless, defendant contends that defendant is entitled to rely on the guidance set forth by the DOHMH and CDC's experts on what condition conflicts with the vaccine.
Moreover, defendant submits that since plaintiff's failure to accommodate claim is based on the allegation that defendant denied his reasonable accommodation request without reason or without consideration of any documents plaintiff submitted, this action should have been brought as an Article 78. In defendant's view, plaintiff has cloaked his allegations as a failure to [*3]accommodate claim when the complaint is clearly just challenging an agency's determination as arbitrary and capricious. Any such claims would then be time barred by the 4-month statute of limitations applicable to Article78 proceedings.
In response, plaintiff contends that defendant's motion to dismiss under CPLR §3211(a)(1) should be rejected. Plaintiff argues that documentation submitted by defendant fails to unequivocally refute plaintiff's claims of discrimination based on his disability, specifically regarding the failure to provide a reasonable accommodation and the failure to engage in the interactive process in good faith. Furthermore, plaintiff asserts that defendant's motion under CPLR §3211(a)(5) should be dismissed. Plaintiff argues that the three-year statute of limitations is applicable to their claims under NYCHRL, in contrast to the four-month statute of limitation applicable to Article 78 proceedings. Additionally, plaintiff maintains that defendant's motion to dismiss under CPLR §3211(a)(7) should be denied. Plaintiff argues that, when accepting plaintiff's complaint as true, plaintiff has established valid claims for relief. Specifically, plaintiff alleges discrimination based on disability, lack of accommodation, and failure of defendant to engage in the interactive process in good faith to assess the availability of an accommodation for plaintiff is sufficient to defeat the instant motion.
Furthermore, should the court find any deficiencies in plaintiff's complaint, plaintiff cross-moves for leave to amend the complaint.
In reply, defendant reiterates the arguments set forth in defendant's moving papers, and submits that plaintiff's proposed amendment does not correct the deficits in the original complaint. Accordingly, defendant submits that the cross-motion should be denied, and the complaint dismissed.

 DISCUSSION
"On a motion to dismiss a cause of action pursuant to CPLR §3211(a)(5) on the ground that it is barred by the statute of limitations, a defendant bears the initial burden of establishing, prima facie, that the time in which to sue has expired" (Benn v Benn, 82 AD3d 548, 548 [1st Dept 2011][quoting Island ADC, Inc. v Baldassano Architectural Group, P.C., 49 AD3d 815, 816 [2d Dept 2008]); see also Gravel v Cicola, 297 AD2d 620 [2d Dept 2002]). "The burden then shifts to the plaintiff to raise a question of fact as to whether the statute of limitations has been tolled or was otherwise inapplicable, or whether the action was actually commenced within the period propounded by the defendant" (QK Healthcare, Inc. v InSource, Inc., 108 AD3d 56, 65 [2d Dept 2013]; see MTGLQ Investor, LP v Wozencraft, 172 AD3d 644 [1st Dept 2019]; Epiphany Community Nursery School v Levey, 171 AD3d 1 [1st Dept 2019]; J.A. Lee Elec., Inc. v City of New York, 119 AD3d 652 [2d Dept 2014]). A plaintiff's submissions in response to the motion "must be given their most favorable intendment" (Benn, 82 AD3d at 548, supra quoting Arrington v New York Times Co., 55 NY2d 433, 442 [1982]).
On a motion to dismiss for failure to state a cause of action under CPLR §3211 (a)(7), courts afford the pleadings a liberal construction, accept the facts as alleged in the complaint as true, and give the plaintiff the benefit of every possible favorable inference. (Leon v Martinez, 84 NY2d 83, 87 [1994]; JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015].) Ordinarily, the court's inquiry is limited to assessing the legal sufficiency of the plaintiff's pleadings; accordingly, the court's only function is to determine whether the facts as alleged fit within a cognizable legal theory (JF Capital Advisors, 25 NY3d at 764, supra). However, where the complaint consists of bare legal conclusions with no factual specificity [*4](Godfrey v Spano, 13 NY3d 358, 373 [2009]) or where the statements in a pleading are not sufficiently particular to give the court and parties notice of the transactions and/or occurrences intended to be proven (CPLR §3013; Mid-Hudson Val. Fed. Credit Union v Quartararo & Lois, PLLC, 31 NY3d 1090, 1091 [2018]), the motion to dismiss should be granted. Indeed, "allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration" (Garber v Board of Trustees of State Univ. of NY, 38 AD3d 833, 834 [2d Dept 2007], quoting Maas v Cornell Univ., 94 NY2d 87, 91 [1999]). CPLR §2013, states that "[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." Thus, conclusory allegations will not suffice (see DiMauro v Metropolitan Suburban Bus Auth., 105 AD2d 236, 239 [2d Dept 1984]; Fowler v American Lawyer Media, 306 AD2d 113, 113 [1st Dept 2003]; Sheriff v Murray, 33 AD3d 688 [2d Dept 2006]). When the allegations in a complaint are vague or conclusory, dismissal for failure to state a cause of action is warranted (see Schuckman Realty v Marine Midland Bank, N.A., 244 AD2d 400, 401 [2d Dept 1997]; O'Riordan v Suffolk Ch., Local No. 852, Civ. Serv. Empls. Assn., 95 AD2d 800, 800 [2d Dept 1983]).
On a motion to dismiss under CPLR §3211 (a)(1), courts may grant such relief only where the "documentary evidence" is of such nature and quality —"unambiguous, authentic, and undeniable" — that it utterly refutes plaintiff's factual allegation, thereby conclusively establishing a defense as a matter of law (see Phillips v Taco Bell Corp., 152 AD3d 806, 806-807 [2d Dept 2017]; VXI Lux Holdco S.A.R.L v SIC Holdings, LLC, 171 AD3d 189, 193 [1st Dept 2019] ["A paper will qualify as 'documentary evidence' if ... (1) it is 'unambiguous,' (2) it is of 'undisputed authenticity,' and (3) its contents are 'essentially undeniable"'].) The Appellate Division, First Department, has explained that the documentary evidence must "definitely dispose of the plaintiff's claim" (Art & Fashion Group Corp. v Cyclops Prod., Inc., 120 AD3d 436, 438 [1st Dept 2014]).
The NYCHRL makes it an "unlawful discriminatory practice for an employer . . . to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation" (see AC § 8-107[28][a]). The same standards used to evaluate claims under the ADA also apply to cases involving the New York State Human Rights Law ("NYSHRL") and NYCHRL. However, under the NYCHRL, a broader definition of disability places the burden on the employer to prove that the employee "could not, with reasonable accommodation, satisfy the essential requisites of the job" (Phillips v. City of NY, 66 AD3d 170, 183 [1st Dept 2009]).
Dismissal as Time-Barred
Here, plaintiff's complaint should have been filed as an Article 78 proceeding. It is axiomatic that at the heart of this litigation is the following dispute: plaintiff's divergence of opinion with defendant's determination that plaintiff's purported cardiac affliction failed to align with the prescribed criteria outlined by the DOHMH and CDC for obtaining an exemption from the COVID-19 vaccine requirement. Plaintiff's complaint, proposed amended complaint, and opposition papers consistently emphasize this key point. Despite presenting multiple causes of action, the quintessential factual assertion in plaintiff's complaint is that defendant denied the [*5]reasonable accommodation request without a valid basis.
Likewise, plaintiff's opposition papers and proposed amended complaint both argue that defendant denied the accommodation request in bad faith or without adequate consideration, discussing Dr. Galluccio's letter and the relationship between myocarditis and COVID-19. It is evident that the primary objective of plaintiff is to challenge the agency's determination regarding the COVID-19 vaccine exception as arbitrary and capricious. Consequently, plaintiff's challenge to the agency's determination should have been pursued as an Article 78 proceeding, and it is now time-barred by the statute of limitations. Plaintiff has failed to rebut defendant's prima facie showing as to the claims being time-barred, thereby entitling defendant to judgment in its favor (see CPLR §3211[a][5]).
In response to defendant's motion to dismiss, plaintiff references Ramos v. N Y City Police Dept, 127 Misc 2d 872, 873 (NY Sup. Ct. 1985), Koerner v. State of New York, 62 NY2d 442 (1984), and Mentor v. Dep't of Educ. of NY, 56 Misc 3d 1220(A) (Sup. Ct. NY Co. 2017). Ramos affirmed that an applicant deemed medically unfit for a police officer position due to scoliosis could pursue a claim under NYSHRL, and was not restricted to a proceeding under NY Civ. Serv. Law § 50(4)(b). Koerner involved a plaintiff terminated for being medically unfit according to the State due to eyesight issues. In Mentor, unrelated to disability discrimination, plaintiff was denied a teaching license due to a prior criminal conviction and sued under New York City Administrative Code § 8-107(10)(b).
By invoking the aforementioned cases, plaintiff's opposition attempts to broadly interpret the issue presented in this case as analogous to all claims pursued generally by plaintiffs under the NYCHRL and NYSHRL. However, not every plaintiff denied a reasonable accommodation by a government employer is barred from bringing a plenary action, and this court's ruling in no way stands for that proposition. To be sure, in the realm of American jurisprudence, a foundational tenet is that a plaintiff possesses the inherent freedom to institute legal proceedings according to their discernment, pursuing redress for perceived injuries they deem compensable. In other words, the essence of justice lies in the autonomy of the plaintiff being empowered to shape the course of litigation in alignment with their convictions. Likewise, this court acknowledges that the damages generally recoverable in a plenary action differ from those in an Article 78 proceeding (see Davidson v. Capuano, 792 F.2d 275, 278-80 [2d Cir. 1986]). Similarly, as highlighted by plaintiff's counsel at oral argument on March 5, 2024, the burdens under a plenary action and an Article 78 proceeding differ.
Notwithstanding, it is the view of this court that under the specific circumstances of this case, plaintiff should not be allowed to pursue a plenary action. Unlike the cited cases, the present matter involves the unique circumstances of the COVID-19 pandemic, where plaintiff's disability did not directly lead to termination, and the alleged heart condition did not render plaintiff medically unfit for job duties like the plaintiffs in Ramos and Koerner. The termination at issue here resulted from plaintiff's refusal to be vaccinated after the agency's determination that his disabilities did not qualify for an exemption. The COVID-19 pandemic posed unique challenges, leading to the implementation of a vaccine mandate as a valid employment condition, along with a comprehensive reasonable accommodation application process and appeals handled by a separate entity, the Citywide Panel. To be sure, the COVID-19 pandemic, a complex and unprecedented chapter within this nation's recent history, presented singular challenges wherein employers found themselves navigating an intricate maze of thousands of reasonable accommodation requests while seeking to maintain order through a vaccine mandate. [*6]This court does not impose its own value judgment as to whether the City's response amidst its challenges was appropriate. Nevertheless, the gravity of the City's challenges does not escape the discerning eye of this court, which, in acknowledging the weight of the circumstances, recognizes that the City created a mechanism for promptly addressing reasonable accommodation requests under a unique model. The mandate for timely processing accommodation requests birthed a review mechanism under the exigency of the moment. Here, the City established, and then publicly and directly conveyed to plaintiff, the administrative process for DOB employees to apply for an accommodation to the City's vaccine mandate. Plaintiff then availed himself of the City's reasonable accommodation request procedures and engaged with DOB and defendant throughout the administrative process. During the interactive dialogue, it was discovered that, according to the DOHMH and CDC's guidance related to the COVID-19 vaccine, plaintiff did not have a medical condition that qualified as a contraindication to the City's vaccine mandate. After a fulsome review, the Citywide Panel found that plaintiff did not require a reasonable accommodation to meet the conditions of his employment. For those met with denial, like plaintiff, recourse was available through the timely filing of a lawsuit, with Article 78 emerging as the vessel for navigating the unprecedented circumstances with requisite urgency. Indeed, Article 78 became an indispensable conduit for those seeking redress, a timely balm for grievances amid a city grappling with the uncharted territory of a global health crisis.
Plaintiff's opposition overlooks the extensive precedent of numerous Article 78 proceedings challenging the Citywide Panel's determinations on vaccine reasonable accommodation requests. Had plaintiff disagreed with the Panel's decision, he should have pursued an Article 78 proceeding rather than waiting over a year to file a lawsuit. Examining the timeline of plaintiff's termination reveals the applicability of the 4-month Article 78 statute of limitations. Plaintiff received two notices of denial for his exemption request on December 2, 2021, and March 4, 2022, with each notice informing him of a three-day compliance deadline. Despite further dialogue and the opportunity to submit a new exemption reason, plaintiff refused vaccination, leading to termination. Notably, plaintiff does not allege applying for reinstatement once eligible.
The essence of the claim, as demonstrated by the circumstances, aligns with the scope of Article 78—a challenge to an administrative determination. Therefore, plaintiff should have pursued a special proceeding under Article 78. His failure to do so in a timely manner means that his claims, as alleged, are time-barred. As such, they must necessarily be dismissed.
Plaintiff cites most prominently to Koerner, a Court of Appeals decision that plaintiff submits this court is bound to follow.[FN3]
However, there are notable distinctions in Koerner that bear reference. First, Koerner was decided forty (40) years ago, without the benefit of knowledge of the unique set of circumstances presented here. Conversely, the Appellate Division, First Department's ruling in Matter of Marsteller v City of New York, 217 AD3d 543 (1st Dept 2023), upon which this court heavily relies, was decided by a court with direct knowledge of, and due consideration of, the unprecedented toll of the COVID-19 global health crisis. Second, Koerner confronted a circumstance wherein the chosen venue, the Court of [*7]Claims, was without recourse to order such equitable relief as reinstatement. The same paradigm simply does not exist under the unique set of circumstances presented here. In fact, an Article 78 proceeding would have afforded plaintiff a faster vehicle for achieving that relief than a plenary action would. Third, the plaintiff's disability in Koerner had a direct nexus to the plaintiff's termination and the plaintiff's need for a reasonable accommodation request to perform their job functions. Here, however, plaintiff was not terminated because of his disability. Nor is plaintiff's alleged heart condition an ailment that rendered him medically unfit to perform his job functions like the plaintiff in Koerner. Rather, here plaintiff was terminated based on his refusal to get vaccinated after defendant's agency made a determination that his alleged disabilities were not eligible for an exemption to the vaccine mandate per DOHMH and CDC guidelines. Pivotally, here plaintiff is challenging defendant's agency's determination premised on the City's vaccine mandate, not the failure to provide a reasonable accommodation like the plaintiff in Koerner. Even so, plaintiff did not require a reasonable accommodation like the plaintiff in Koerner, thereby making Koerner distinguishable from the facts of this case.
A thorough review of the NYSHRL and NYCHRL does not require a different result, as either statute presupposes that an employee must have an actual need for a reasonable accommodation. If an employee's alleged disability does not prevent an employee from satisfying the requirements and conditions of his employment, he does not require an accommodation. Here, the documentary evidence submitted underscores that defendant engaged in a collaborative dialogue and accessed plaintiff's reasonable accommodation requests. According to the DOHMH's and CDC's guidelines, plaintiff did not require a reasonable accommodation because he did not have a condition that prevented him from being vaccinated. The DOHMH and the CDC both issued guidelines on what medical conditions qualified as contraindications from the COVID-19 vaccine.
The guidelines issued by DOHMH on December 20, 2021, indicated that individuals with a history of severe allergic reactions, such as anaphylaxis or angioedema, following a prior dose or to a component of any of the three authorized COVID-19 vaccines could be eligible for permanent medical exemptions. These guidelines were consistent with the CDC Guidelines on Contraindications and Precautions to COVID-19 vaccination, wherein a table enumerates conditions deemed contraindications by the CDC. Notably, plaintiff's condition is not included in the mentioned table.
As such, defendant's reliance on the opinions of their medical professionals, viewed in the context of the NYSHRL and NYCHRL, does not give rise to a discrimination claim, as illustrated in Farrell v. N.Y.C. Police Dep't, 37 NY2d 843, 843 (1975), where the court found it reasonable for the NYPD to base termination on their chief surgeon's medical opinion, despite conflicting medical opinions presented by the appellant.
Furthermore, Dr. Galluccio's letter does not state that the plaintiff's condition conflicts with vaccination. Instead, it is filled with statements that suggest theoretical possibilities contingent on a series of events. The letter does not specify the likelihood of these events occurring nor does it quantify the risk factors associated with stress-inducing incidents like smoking and taking illicit drugs compared to receiving the COVID vaccine. Additionally, the letter does not clarify whether being unvaccinated and contracting COVID would pose a greater risk for the plaintiff in terms of these remote events. Therefore, construing plaintiff's claims in a light most favorable, a colorable claim cannot be asserted under the NYSHRL or NYCHRL, thereby rendering an Article 78 proceeding the only remedy available to plaintiff under the facts [*8]alleged herein.
As such, dismissal is warranted on plaintiff's time-barred claims.
Dismissal for Failure to State a Cause of Action and Rebut Documentary Evidence
Even if plaintiff's complaint were not dismissed as time-barred, it would still fail. Notably, plaintiff has not alleged factual details, beyond legal conclusions, indicating that the City's process for handling accommodation requests related to the vaccine mandate, especially plaintiff's request, did not meet the requirements outlined in the NYCHRL [FN4]
concerning cooperative dialogue. The Appellate Division, First Department, in Matter of Marsteller v City of New York, 217 AD3d 543 (1st Dept 2023), has already determined the rationality of the City's process. Plaintiff has not provided facts demonstrating that, in his specific circumstances, NYCHRL necessitated "a more robust or individualized dialogue than the process he received" (id. at 545).
It is worth noting that plaintiff utilized the administrative process three times, consistent with the procedure validated in Marsteller. During this period, the DOB allowed plaintiff to submit additional documentation, specifically in the form of Dr. Galluccio's letter, following a further dialogue initiated after the initial denial of plaintiff's reasonable accommodation request for a putative disability. Through Dr. Galluccio's letter, plaintiff introduced an entirely new reason seeking exemption from the vaccine mandate.
However, the DOB forwarded that letter to the Citywide Panel, which, in turn, sent it to the DOHMH. DOHMH considered plaintiff's purported condition and his doctor's letter, concluding that a heart arrhythmia did not constitute a contradiction to the vaccine, aligning with both DOHMH's and the CDC's guidelines for an exemption to the vaccine mandate. When logically interpreted alongside the guidelines of DCAS and DOHMH, DOHMH is asserting that Wolff-Parkinson-White syndrome or a heart arrhythmia would not pose a significant risk of myocarditis justifying an exemption pursuant to these guidelines.
In his verified complaint, plaintiff states in conclusory fashion that "[d]efendant, pursuant to its policy and practices, violated the NYCHRL by failing to provide a reasonable accommodation to [p]laintiff" (see Complaint ¶ 24) and that "[d]efendant, pursuant to its policy and practices, violated the NYCHRL in failing to engage in the interactive process when an accommodation was requested by [p]laintiff" (see Complaint ¶ 32). The factual support as to both plaintiff's first and second count is premised on plaintiff's assertion that "at no time did [d]efendant engage with [p]laintiff to attempt to discover whether a reasonable accommodation could be made to [p]laintiff in lieu of receiving the COVID-19 vaccine" (see Complaint ¶ 16). Likewise, plaintiff contends that documentation plaintiff received was neither "reviewed" nor "considered" (see Complaint ¶ 16). However, plaintiff's assertions are flatly contradicted by the documentary evidence submitted.
Plaintiff's additional assertion that defendant failed to engage in a cooperative dialogue regarding his reasonable accommodation request as required under the NYCHRL is also without merit based on the precedent set by Marstellar (see Complaint at ¶¶ 13, 18, 29-35). To be sure, in Marsteller, the Appellate Division, First Department, evaluated the City's process for resolving reasonable accommodation requests in connection the COVID-19 vaccine mandate and [*9]held that the City met its obligations under the NYCHRL (see Marsteller, 217 AD3d 543, supra). In reaching that conclusion, the appellate court reasoned that the City engaged in a cooperative dialogue by establishing and adequately informing its employees of its procedure for City employees to submit reasonable accommodation requests and appeal denials (id.). Further, the appellate court found these procedures required the City to engage with their employees throughout this administrative process (id.). Thus, no further "individualized dialogue" was required given the City's need to evaluate a high volume of reasonable accommodation requests under the time constraints of a "evolving public health emergency" (id.). As the analysis sustained in Marsteller would be identical under the NYSHRL, dismissal would still be warranted even if this court were to permit plaintiff's proposed amendment.
Plaintiff's claim that the City failed to engage in cooperative dialogue under the NYCHRL fails for the same reasons as the petitioner's did in Marsteller. Although Marsteller involved an NYPD Police Officer, DOB—following DCAS's October 21, 2021 guidance—implemented an identical process as the NYPD to resolve reasonable accommodation requests. As with the petitioner in Marsteller, here plaintiff availed himself of the City's reasonable accommodation application process and engaged with defendant throughout the administrative process. Plaintiff completed the procedure for a requesting a medical reasonable accommodation from submission through appeal. Plaintiff's first medical exemption request was based on a lab result that plaintiff claimed showed he had strong immunity to COVID-19. DOB denied that request on November 3, 2021, stating that the condition did not "meet the criteria outlined per the DOHMH Commissioner's Order for a permanent or temporary medical exemption." DOB then reminded plaintiff again that he could appeal to the Citywide Panel and provided him instructions on how to do so. In response, plaintiff appealed DOB's denial of his medical reasonable accommodation request and the Citywide Panel denied plaintiff's appeal.
Moreover, not only did plaintiff successfully complete the entire accommodation process from submission through appeals, but, following its initial completion, DOB provided plaintiff with an opportunity to submit additional information. In response, plaintiff submitted a letter from Dr. Galluccio, introducing a new (and fourth) reason for his alleged need for a reasonable accommodation—claiming a medical condition related to arrhythmia. Notably, plaintiff had never raised this issue in any prior reasonable accommodation request and submitted this letter three months after initial submission of his medical accommodation request. Despite this, defendant accepted documentation and reevaluated plaintiff's medical reasonable accommodation request for second time.
Subsequently, the Citywide Panel denied plaintiff's medical reasonable accommodation request for a second time, determining that this condition did not qualify as a contraindication to COVID-19 vaccination, per the guidelines of DOHMH and CDC. Thus, akin to the petitioner in Marsteller, plaintiff availed himself of reasonable accommodation application process multiple times and engaged with the City throughout process, negating the necessity for further individualized dialogue. Plaintiff's argument in opposition, contending that defendant did not engage in "good faith," lacks support within record, as plaintiff merely restates his conclusory allegations from his complaint, claiming that defendant supposedly "ignored" contents of plaintiff's doctor's note submitted to the Citywide Panel.
Contrarily, as demonstrated in defendant's initial motion papers, defendant permitted plaintiff to submit Dr. Galluccio's letter as supplemental documentation, introducing a completely new reason for vaccine exemption that plaintiff had not previously mentioned. This [*10]submission occurred as part of further dialogue after the initial denial of plaintiff's disability reasonable accommodation appeal. Once submitted, DOB took plaintiff's letter and forwarded it to Citywide Panel for further evaluation. The Citywide Panel then sent the letter to the DOHMH as the author and medical authority for interpreting DOHMH's own guidelines for medical exceptions to the vaccine mandate.
Only then did DOHMH make the determination that Wolff-Parkinson-White syndrome or heart arrhythmia did not present significant risk of myocarditis and, therefore, was not contraindication to COVID-19 vaccine. Consequently, defendant's good faith is evidenced by plaintiff's active engagement in a more robust cooperative dialogue than that upheld in Marsteller. In this case, plaintiff made three separate reasonable accommodation requests and navigated administrative process on three separate occasions, in contrast to single request in Marsteller. Initially, plaintiff completed administrative process by claiming anxiety as grounds for vaccine mandate exemption. Upon denial, defendant and plaintiff engaged in further dialogue, allowing plaintiff to raise an entirely new reason for needing an exemption—his alleged heart condition. For this, plaintiff was permitted to submit supplemental documentation to DOB and the Citywide Panel for further consideration. Although not alleged in plaintiff's complaint, and thus not mentioned in defendant's initial motion, plaintiff also navigated the administrative process an additional time when requesting religious exemption to the vaccine mandate.
Regardless, as a matter of law, pursuant to the NYCHRL, there is no requirement that an agency engage in a "cooperative dialogue" until an employee establishes that he or she is or may be entitled to an accommodation (see Hosking v. Memorial Sloan-Kettering Cancer Ctr., 186 AD3d 58 [1st Dept 2020]["The term cooperative dialogue means the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in dialogue concerning the person's accommodation needs."]; see also Baker v. Home Depot, 445 F.3d 541, 546 [2d Cir. 2006][employer must offer a reasonable accommodation after the employee establishes a prima facie case]; see also Muhammad v. N.Y.C. Transit Auth., 52 F. Supp. 3d 468, 483 [E.D.NY 2014]). Thus, although plaintiff's complaint fails to plead any facts that he was entitled to a reasonable accommodation, the City met its obligations under the NYCHRL to engage in a cooperative dialogue under Marsteller even though the City was not required to do so.
Consequently, plaintiff's aforementioned bare legal conclusions and defendant's unrebutted documentary evidence establish, as a matter of law, that defendant is entitled to judgment in its favor under CPLR §§3211 (a)(1) and 3211(a)(7).
Plaintiff's Cross-Motion to Amend
"A party may amend his pleading once without leave of court within twenty days after its service, or at any time before the period for responding to it expires, or within twenty days after service of a pleading responding to it. Thereafter, pursuant to CPLR §3025(b), "[a] party may amend his or her pleading . . . at any time by leave of court . . . ." "Generally, the decision to allow a party to amend a pleading is a discretionary matter for the trial court" (Derago v Ko, 189 AD3d 1352, 1353 [2d Dept 2020]; see Krichmar v Krichmar, 42 NY2d 858, 860 [1977]; R & G Brenner Income Tax Consultants v Gilmartin, 166 AD3d 685, 687 [2d Dept 2018]). "Although leave to amend should be freely given in the absence of prejudice or surprise to the opposing [*11]party, the motion should be denied where the proposed amendment is palpably insufficient or patently devoid of merit" (Strunk v Paterson, 145 AD3d 700, 701 [2d Dept 2016]; see Derago, 189 AD3d at 1354, supra). Likewise, a motion for leave to amend in response to a motion to dismiss the complaint is "futile" and should be denied where "the defects [in the complaint] are [not] cured by the proposed . . . amended complaint" (Meimeteas v. Carter Ledyard & Milburn LLP, 105 AD3d 643, 643 [1st Dept 2013]).
Here, plaintiff's amended complaint reiterates the same conclusory and unsubstantiated allegations without addressing any of the deficiencies raised by defendant in its motion papers. Specifically, plaintiff asserts that defendant failed to consider the entirety of the plaintiff's doctor's note, which included a potential connection to myocarditis, details about plaintiff's anxiety reasonable accommodation request, and additional dates related to plaintiff's reasonable accommodation request timeline (see generally Plaintiff's Proposed Amended Complaint). Plaintiff attempts to refine his cooperative dialogue claim, contending that defendant engaged in cooperative dialogue but lacked "good faith" (see id. at pp. 6-8). Other than that clarification, plaintiff introduces no new causes of action, except for the NYSHRL equivalents of those claims already asserted in the original complaint. Although the amended complaint references exhibits, it fails to attach any, suggesting reference to defendant's exhibits appended to its motion to dismiss.
With respect to the NYSHRL claims, this court notes that considering the importance of an employer's consideration of the employee's proposed accommodation, the employer normally cannot obtain judgment as a matter of law on a NYSHRL claim unless the record demonstrates that there is no issue as to whether the employer duly considered the requested accommodation. And, the employer cannot present such a record if the employer has not engaged in interactions with the employee revealing at least some deliberation upon the viability of the employee's request. Consequently, to prevail on a motion with respect to a NYSHRL claim, the employer must show that it "engage[d] in a good faith interactive process that assesse[d] the needs of the disabled individual and the reasonableness of the accommodation requested" (Phillips, 66 AD3d 170, 176 [1st Dept 2014]; see Parker v. Columbia Pictures Indus., 204 F.3d 326, 338 [2d Cir. 2000] [holding that an employee's proposal of a reasonable accommodation "triggers a responsibility on the employer's part to investigate that request and determine its feasibility," and "(a)n employer who fails to do so, and instead terminates the employee based on exhaustion of leave, has discriminated 'because of' disability within the meaning of the (federal ADA)"]; see also Kinneary v. City of New York, 601 F.3d 151, 156 [2d Cir.2010]; Morton v. United Parcel Serv., Inc., 272 F.3d 1249, 1256 n. 7 [9th Cir.2001], overruled in part on other grounds by Bates v. United Parcel Serv., Inc., 511 F.3d 974, 998 [9th Cir. 2007]; Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1116 [9th Cir. 2000]). And, because the NYCHRL provides broader protections against disability discrimination than the NYSHRL, the NYCHRL unquestionably forecloses judgment as a matter of law where the employer has not engaged in a good faith interactive process regarding a specifically requested accommodation (see Phillips, 66 AD3d at 176, supra).
Here, however, both under the NYCHRL and the NYSHRL, defendant has shown that its process, in line with Marstellar, was done in good faith under the unique challenges presented by the COVID-19 pandemic (see Marstellar, 217 AD3d at 544-545, supra). As plaintiff has failed to rebut that, and as the proposed amendment suffers from the same deficiencies as the original pleading, amendment is unwarranted here. 
This court's conclusion, however, should not be construed too broadly to foreclose a [*12]plenary action asserted under either the NYSHRL or NYCHRL premised on facts dissimilar to those unique facts asserted here.
Likewise with respect to the proposed amendment, as previously addressed, Dr. Galluccio's letter concerning the potential link between plaintiff's alleged condition and myocarditis does not override the guidelines provided by the CDC and DOHMH, or DOHMH's interpretation of its guidelines when denying plaintiff's reasonable accommodation request. Nevertheless, defendant did consider plaintiff's letter and the alleged condition in its entirety, concluding that an arrhythmia does not pose a significant risk of myocarditis justifying an exception to the vaccine mandate. Thus, a proposed amendment on these grounds would not rectify the deficiencies in plaintiff's original complaint.
Similarly, the additional facts related to plaintiff's anxiety do not remedy any shortcomings in the original complaint. Firstly, when plaintiff's reasonable accommodation request for telework based on anxiety was denied, DOB's EEO Office offered to discuss alternatives with plaintiff, as working from home would not address his work-related stress. However, plaintiff did not engage further with DOB beyond submitting subsequent vaccine-related reasonable accommodation requests. Furthermore, plaintiff's termination resulted from his refusal to be vaccinated after being deemed eligible for vaccination and not because of telework-related issues.
Finally, as previously explained, defendant more than fulfilled its burden in demonstrating that it engaged in cooperative dialogue with plaintiff in good faith. Unrebutted documentary evidence shows that plaintiff was permitted to submit multiple reasonable accommodation requests related to the vaccine and was allowed to supplement these requests with additional documentation. Defendant also considered plaintiff's supplemental medical documentation by consulting DOHMH, as the authors of the City's guidelines for medical vaccine exemptions, for evaluation.
As such, there is no basis for amendment here, since such amendment would be "futile" because "the defects [in the complaint] are [not] cured by the proposed . . . amended complaint" (Meimeteas, 105 AD3d at 643, supra).
Accordingly, it is hereby
ORDERED that defendant's motion to dismiss plaintiff's complaint in its entirety is granted; and it is further
ORDERED that plaintiff's cross-motion for leave to serve an amended complaint is denied; and it is further
ORDERED that plaintiff's complaint is hereby dismissed, with prejudice; and it is further
ORDERED that the Clerk of the court is directed to enter judgment in defendant's favor. 
The foregoing constitutes the decision, order, and judgment of the court.
DATE 3/6/2024
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:COVID-19 (coronavirus disease 2019) is a disease caused by a virus named SARS-CoV-2. It can be very contagious and spreads quickly. Over one million people have died from COVID-19 in the United States. COVID-19 most often causes respiratory symptoms that can feel much like a cold, the flu, or pneumonia.

Footnote 2:Plaintiff also originally had a religious accommodation request that plaintiff concedes has been abandoned, as confirmed at oral argument before the court on February 5, 2024.

Footnote 3:Notably, the other cases steeply relied upon by plaintiff, Ramos and Mentor, are trial court decisions that this court is not bound to follow. 

Footnote 4:Or the NYSHRL, as asserted in plaintiff's proposed amendment.